# CHARLESTON.

BOARD OF EDUCATION v. COUNTY COURT OF TYLER COUNTY.

Submitted January 25, 1916.   Decided February 1, 1916.

1. STATUTES—*Construction—Conflicting Provision.*

Ordinarily where there is a conflict between two parts of a single act the one latest in position will be declared to be the law, as being the latest expression of the legislative will, and this rule is applicable to conflicting sections in the revision of a statute. (p. 529).

2. SAME.

And where two distinct statutes stand in pari materia, and sections thereof are in irreconcilable conflict, that section must prevail which can properly be considered as the last expression of the law making power, this without regard to the relative position of such sections in the Code. (p. 530).

3. SAME—*Re-Enactment—Intermediate Act.*

Generally, where a later law is merely a re-enactment of the

former it will not be regarded as repealing the intermediate act, which qualified and limited it, but the intermediate act will be deemed to remain in force qualifying or modifying the new act as it did the first.  (p. 530).

4.  SAME.
But an exception to the general rule lastly stated is that when the intermediate act and the new or re-enacted law are in irreconcilable conflict, the latter will prevail over the intermediate act, under the general rules above stated, as being the last expression of the legislative intent.  (p. 530).

5.  MUNICIPAL CORPORATIONS—*Magisterial Districts—Stocks and Bonds —Application of Dividends and Interest—Railroad Subscription.*
Applying the foregoing principles, section 60, of chapter 54, serial section 2966, Code 1913, as amended by chapter 36, Acts 1911, relating to the application of dividends on stock or interest on bonds owned by a magisterial district, repealed by implication section 24, chapter 39, serial section 1564, of the Code, so far as in conflict therewith.  (p. 530).

Error to Circuit Court, Tyler County.

Action by the Board of Education of Ellsworth District against the County Court of Tyler County. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Boreman & Carter, T. P. Hill,* and *C. B. Riggle,* for plaintiff in error.

*O. B. Conaway* and *Geo. L. Rose,* for defendant in error.

MILLER, JUDGE:

By mandamus the Board of Education of Ellsworth District, Tyler County, would have us require the county court of said county forthwith to pay over or cause to be credited to the free school fund of said district, the sum of $9,042.00, alleged in the writ and admitted in defendant's return thereto, as well as in the agreed statement of facts submitted, to have been collected from the Clarksburg Northern Railroad Company, for interest for the years 1912, 1913, and 1914, on $125,000.00 of coupon bonds of said railroad company. These bonds are not the property of the board of education, but of the magisterial district of Ellsworth, and were acquired by said magisterial district, or by the county court on its behalf,

by exchange for its bonds or bonds issued on its behalf, to said railroad company to aid it in the constructing of its railroad, pursuant to the provisions of chapter 54, Code of West Virginia.

Plaintiff predicates its right to this relief upon the provision of section 24, chapter 39, serial section 1564, Code 1913, relating to subscriptions to the stock or bonds of railroads or other works of internal improvement, etc., and containing among others the following provision: "The dividend of such stock or interest on such bonds, shall be collected as the court may order, and be paid into the county treasury; or be paid and credited to the free school fund of the district or districts, where the subscription to stock or bonds is made by a district or districts."

Instead of disposing of the interest money collected according to the requirements of said section 24, it is alleged, admitted and stipulated in the agreed statement of facts, that respondent appropriated $4,342.00 thereof, in payment of the interest on the bonds of said Ellsworth District, so issued to said railroad company, and that the residue thereof, to-wit, $4,700.00, was transferred by it to the credit of the sinking fund, now amounting to $11,000.00, created to meet the principal of said bonds at maturity, and deposited with the Bank of Middlebourne.

To justify this appropriation of the interest so collected on the bonds of the railroad company, respondent pleads and relies upon section 60, chapter 54, serial section, 2966, Code 1913, and particularly the provision thereof italicized, as follows: "The right to the stock or bonds of such company so subscribed for shall vest in such county, district, city, town or village making the same, and the county court of the county, or council of the city, town, or village, shall from time to time, as may be necessary, appoint proxies to represent the stock held by such county, district, city, town or village, in the meetings of the stockholders of the company, and also an agent to collect the dividend on such stock, or interest on such bonds; *which dividend or interest when collected, shall be applied annually in diminution of the county, district, city, town or village levy.*"

It is plainly manifest that the provision italicized is wholly

inconsistent with and repugnant to the provision of section 24, of chapter 39, of the Code, and that the two cannot stand together. If this interest money be credited to the free school fund of the district, it would be subject to disposal by the board of education, a distinct corporate body, and for other and different purposes than those prescribed by said section 60, of chapter 54. If disposed of by the county court, according to the provisions of said section 60, the money would go in reduction or diminution of the district levy, that is such levy for district purposes as the county court is authorized by law to make, as a levy for district roads or some special levy to pay the interest and principal of some debt created on behalf of the district.

It is agreed that respondent for each of the years covered by said interest collections and as provided by section 59, of said chapter 54, levied and collected from the people of said district on each one hundred dollars of the taxable value of the property therein, to pay the interest on the bonds of said district and to create a sinking fund to pay the principal thereof, as follows: For the year 1912, for interest, sixteen cents, and for sinking fund, eleven cents; for the year 1913, for interest, eleven cents, and for sinking fund, eleven cents; for the year 1914, for interest, thirteen cents, and for sinking fund, eleven cents. Whether the sums so levied and collected were sufficient for those purposes, does not clearly appear; but it does appear from the agreed facts that of the total amount of interest collected from the railroad company, $4,342.00 was applied to payment of interest accrued on the bonds of said district, and that the residue thereof was carried to the credit of the sinking fund. If the interest so collected from the railroad company was actually applied by respondent in diminution of the levy for interest on the bonds of the district and to the credit of the sinking fund created to pay the principal, and said section 60, of chapter 54, governs, then there was no misappropriation of said funds by respondent, and the statute was substantially, if not literally, complied with.

But whether there was compliance with this statute, or whether without such diminution in the levies sufficient sums were levied and collected each year to meet and pay the full

amount of interest and the amount due the sinking fund, are questions not presented for decision. The question we have to decide is whether section 24, of chapter 39, or said section 60, of chapter 54, controls the disposition of this case, for as we have seen they are wholly inconsistent, and both cannot be given effect.

The legislative history of these conflicting sections will, we think, enable us to dispose of the case upon correct legal principles. Respecting the provision of section 24, chapter 39, we find that section 9, chapter 78, Acts of 1863, passed October 21, 1863, relating to the powers and duties of the several counties of the state, provides that ''the dividends on such stock,  *  *  *  shall be paid into the county treasury, and be exclusively applied to the payment of the debts or the diminution of the annual levy thereof.'' This provision seems to have been taken from section 51, chapter 61, of the Code of Virginia, 1860, relating to works of internal improvement, and subscriptions by counties to such works, saying: ''which dividends, when collected, the said court shall annually apply to the diminution of the levy in such county.'' There seems to have been no corresponding provision in Virginia in the chapter relating to county courts. The provision of the act of October 21, 1863, appears in section 41, of chapter 39, of our Code of 1868, but in this form: ''The dividends on such stock shall be collected as the said supervisors may order, and paid into the county treasury.'' No corresponding provision is found in chapter 54, of the Code of 1868, which contains but thirty sections in all.

The conflict between section 24, of chapter 39, and section 69, of chapter 54, of the present Code, seems to have had its incipiency in two acts of the legislature of 1872-3, the first being chapter 88 thereof, approved April 3, 1873, entitled ''An Act to provide for the incorporation of associations that may be organized for the purpose of constructing railroads, maintaining and operating the same,'' etc.; the other being chapter 114, of said acts, entitled ''An Act amending and re-enacting certain sections of chapter thirty-nine of the code concerning boards of supervisors, so as to confer upon county courts or other tribunals the administration of county affairs''.

One of the provisions of section 30, of said chapter 88,

corresponding to section 60, of chapter 54, is as follows: "which dividends, when collected, shall be applied annually in diminution of the county, district, city or town levy." Section 27 of this act seems to have been the first to authorize a district of a county to become indebted for subscriptions to works of internal improvement; wherefore the amendment relating to the application of dividends to the diminution of the district levies also.

Said chapter 114 amended and re-enacted most of the sixty-seven sections of said chapter 39, and added thereto two new sections, 68 and 69.

Section 41, of said chapter 39, as amended, corresponding to section 24 of said chapter as now contained in the Code, as did section 27, of chapter 88, of said acts, provided for subscriptions by magisterial districts to works of internal improvement, and contains this provision relating to disposition of dividends on stock so subscribed: "The dividends of such stock shall be collected as the said court may order, and be paid into the county treasury," no provision being made as to how the money should be applied. While there is no actual conflict between the provision of said section 30, of chapter 88, and section 41, of chapter 114, the language is different, the first being specific, the latter general.

Section 24, of chapter 39, as amended by chapter 5, of the acts of 1881, contains identically the same provision on this subject as section 41, chapter 39, of the Code of 1868, from which section 41, the provision of section 24 was manifestly taken; but chapter 17, of the acts of 1881, amending and re-enacting chapter 54 of the Code of 1868, and repealing chapters 88 and 215, of the acts of 1872-3, carries into that chapter some of the provisions of said chapter 88. This latter chapter seems to have been an independent act, not in terms specifically amending any chapter of the Code. Section 60, of said chapter 54, as amended, contains substantially the same provision relating to the disposition of dividends, as is contained in section 30, of said chapter 88, acts of 1872-3.

But the real conflict between the two chapters of the Code was introduced by chapter 61, acts of the Legislature, 1891, passed March 4, 1891, amending said section 24, of chapter 39. As amended, it has this provision, relating to the disposition

of dividends on stock or interest on bonds subscribed: "The dividend on such stock or interest on such bonds, shall be collected as the court may order, and be paid into the county treasury; or be paid and credited to the *free school fund of the district or districts,* where the subscription to stock or bonds is made by a district or districts." This act of 1891 is the last amendment of said section 24, of chapter 39, and is the section now relied upon by the petitioner.

But section 60, of chapter 54, on which respondent relies, was later amended by chapter 36, Acts 1911, and is the same as now contained in the Code of 1913. This is the last expression of the legislature on the subject. The only change made in this section by the amendment of 1911, was to make its provisions apply not only to dividends on stock subscribed, but also to interest collected on bonds. This amendment was made necessary by an amendment by the same act, of section 57, of said chapter 54, authorizing counties, districts, and incorporated cities, towns and villages, to subscribe not only stock of such corporations, but also to its bonds. It is manifest that the legislature in this last amendment of sections 57, 58, and 60, of said chapter, had in mind the provision of section 24, of chapter 39, of the Code, for said section 57, in terms, authorizes such subscription to the capital stock and bonds of such corporations, "in the manner prescribed by section twenty-four of chapter thirty-nine", and further provides that "all the provisions of said section shall be applicable to such subscriptions."

We thus have presented the question, which of these two conflicting statutes, section 24, of chapter 39, or section 60, of chapter 54, Code, shall prevail? As already observed, this conflict in the statutes was introduced by said chapter 61, Acts 1891, amending section 24, of said chapter 39. Prior to that time there seems to have been no material conflict in the several provisions of chapters 39 and 54.

The question presented may be solved, we think, upon well recognized principles and rules of statutory construction. One of these, applicable to the case in hand, is, that where there is a conflict between two parts of a single act, the one latest in position will be declared to be the law, as containing the latest expression of the legislative will. 26 Am. & Eng.

Ency. Law, 619, paragraph c; *Speidel Co.* v. *Warder,* 56 W. Va. 602; *Coal & Coke Co.* v. *Tax Commissioner,* 59 W. Va. 605, 632. And the same rule applies in the construction of conflicting sections in the revision of a statute. *Id.* 734.

Another rule is that where there are two distinct statutes standing in pari materia, and sections thereof are in conflict, that section must prevail which can properly be considered the last expression of the law making power, and this without regard to the relative position of such sections in the Code. 26 Am. & Eng. Ency. Law, 734; 2 Lewis' Sutherland Statutory Construction, (2nd ed.) 349.

These rules we think should apply and govern the disposition of this case, unless a third rule of construction should control, namely, that where a later law is merely a re-enactment of the former it will not be regarded as repealing an intermediate act, which qualifies and limits the former, but such intermediate act will be deemed to have remained in force and to qualify or modify the new act as it did the first. 36 Cyc. 1084, and cases cited.

The rule just stated is not without exception however; that exception is, that when the two acts, the later and the intermediate act, are wholly inconsistent with each other and cannot stand together, the intermediate act will be regarded as repealed by the last act.

So we are left free to apply to the case before us the two other rules of construction. The first of these is applicable to the provision of section 57, of said chapter 54, as amended by the act of 1911, which refers to said section 24, of chapter 39, and makes the provision thereof apply to the method and manner of making subscriptions to the capital stock or bonds of such corporations. But we do not think it was intended to make the provision of said section 24, relating to the application of dividend on stock or interest on bonds subscribed, applicable also, for then the provision of sections 57 and 60 would be wholly inconsistent with each other.

But if section 57 did in terms so apply the provision of said section 24, being inconsistent with section 60, of the same chapter, as re-enacted, and that section being the last expression of the legislature on the subject, would operate to repeal the inconsistent provisions of said sections, and leave section

60 in full force. Construed with reference to these rules the act of 1891 was clearly the law until it was repealed by implication by the act of 1911, amending and re-enacting said sections 57, 58 and 60, of chapter 54, of the Code. Since that amendment we are clearly of opinion that said section 60, as amended and re-enacted, repealed said section 24, of chapter 39, as amended by the act of 1891, and should prevail over said section 24, and is the law controlling this case.

These views of the several provisions of the statute, invoked by the parties, result of course in the denial of the writ. of mandamus prayed for.

*Affirmed.*