STATE *ex rel.* ANDREW S. THOMAS, JR. *v.* THE BOARD OF
BALLOT COMMISSIONERS OF KANAWHA
COUNTY, WEST VIRGINIA *et al.*

(No. 9634)

Submitted July 31, 1944. Decided September 6, 1944.

*Preston & Davis, Brown, Jackson & Knight* and *C. M. Love,* for petitioner.

*Philip Angel, Harold H. Neff, D. L. Salisbury, H. W. Bowers* and *Rummel, Blagg & Stone,* for respondents.

Fox, JUDGE:

The Kanawha County Board of Education is presently composed of two members whose terms expire on June 30, 1949, one of whom is a resident of Charleston Magisterial District, and the other of Loudon Magisterial District; two members whose terms expire on June 30, 1945, and whose successors for the full term of six years are to be elected at the next general election; and one member who was appointed to fill a portion of an unexpired term, and whose successor for such unexpired or short term is to be elected at the coming general election. Charles P. McCabe, a resident of Loudon Magisterial District, and Donald C. Shonk, a resident of Cabin Creek District, have been nominated for the short term. No question of their nomination is involved in this proceeding, although there is involved the question of whether Loudon District is entitled to nominate more than one person for membership of said board. The sole question here presented is who is entitled to be placed on the nonpartisan ticket in the November election for the two terms of six years, expiring on June 30, 1945. Charleston and Loudon Districts having holdover members, only one additional member of the board can be elected from those districts.

In the primary election held on the 12th day of May, 1944, there were thirteen candidates for the two six-year terms in question, and the votes received by these candidates, and their residences as to magisterial districts, will appear from the statement following:

| Name | District | Votes |
|------|----------|-------|
| C. R. Morgan | Charleston | 11,079 |
| Andrew S. Thomas, Jr. | Charleston | 11,066 |
| N. N. Snyder | Big Sandy | 10,797 |
| Mrs. Dale Thomas | Charleston | 9,643 |
| Dr. B. B. Evans | Loudon | 8,928 |
| Dr. W. O. Morris | Loudon | 8,229 |
| Mrs. Frances S. King | Cabin Creek | 7,469 |
| Elbert R. Cook | Big Sandy | 7,244 |
| R. E. Plott | Charleston | 6,149 |
| Geo. W. Gillespie | Union | 5,492 |
| Floyd M. Bump | Cabin Creek | 5,371 |
| Willard P. Smith | Charleston | 4,491 |
| Bernard Bank | Charleston | 2,889 |

No question is raised as to the nomination of C. R. Morgan and N. N. Snyder. The question to be decided is what other two persons shall be declared nominated for said terms. The petition of the relator, Andrew S. Thomas, Jr., sets up the facts above noted; avers that he is entitled to be declared one of said nominees; and prays for a peremptory writ of mandamus against the respondents, composing the Board of Canvassers of said county, requiring them to certify his nomination; and against the Board of Ballot Commissioners of said county, requiring them to place his name on the non-partisan ticket for the coming general election. Upon the filing of this petition, Dr. B. B. Evans, Frances S. King and Elbert R. Cook filed separate intervening petitions, each claiming that they were entitled to places on said non-partisan ballot for the general election. We have determined that these intervening petitioners are entitled to file their petition, and to be heard touching their alleged rights in the premises; and the case is heard on the relator's petition, upon the intervening petitions aforesaid, and upon other pleadings and papers filed.

So long as members of the Boards of Education were selected on a partisan basis, there could be little doubt as to how nominations could be made. Section 1 of Article 5, Chapter 8, Acts, First Extraordinary Session, 1933, commonly known as the County School Unit Law, provides

that no more than two members of the board shall be elected from the same magisterial district. This is another way of saying that any magisterial district may become entitled to as many as two members of the board, and this provision was made necessary by the fact, of which we take judicial notice, that in many counties of the state there are no more than four magisterial districts, and therefore it was imperative that the law permit the election of two members of the board from a magisterial district. At the time of the enactment of the County School Unit Law, the law governing the nomination of candidates was general in its terms, and there was no special limitation affecting the manner of nominating candidates for members of the Boards of Education. However, in view of the provision that no more than two members could be elected from any magisterial district, the legislature apparently thought it advisable to make some special provision, which would limit the number of candidates who might be nominated from the various magisterial districts throughout the state, and on this theory, Section 5, Article 4 of Chapter 3 of the Code was amended by Chapter 57, Acts of the Legislature, 1939, and a proviso inserted therein covering the nomination of county boards of education. This proviso reads as follows:

> "*Provided further,* That with respect to nominations of members of a county board of education, no more than two of such members shall be nominated *as the party candidates* from the same magisterial district where more than two such members are to be *so* nominated at any primary election, and if more than two persons residing in the same district shall receive the greater number of votes cast at such primary election, then only the *two of such* persons receiving the highest number shall be declared nominated *as the candidates of their party,* and the person or persons living in another district who shall receive the next highest or two highest number of votes, as the case may be, shall be declared so nominated, and so on to the next highest in another dis-

trict; and in no event shall any such candidate or candidates be nominated from the same magisterial district wherein two already elected or otherwise qualified members of such board of education reside and who will continue to hold office after the beginning of the term for which such nomination or nominations are made, except that, one such nomination may be made for the same magisterial district wherein only one such already elected or otherwise qualified member resides and will continue to hold office as aforesaid." (Italics supplied)

It will be observed that the proviso above quoted permits the selection of two party candidates from the same magisterial district, and the reference is to members of a county board of education. This means that any political party entitled to a place on the general election ticket would be entitled to nominate one candidate for each of the terms to be filled in the general election; and there being two major political parties in this state, the effect would be to permit the nomination of two persons for each place on the board to be filled at such election; and if a district were entitled to elect two persons on said board, four persons could be nominated therefor. We think it clear that the legislature did not intend to restrict, in any way, the right of any magisterial district to have two members of the board, and to nominate four candidates therefor, provided, of course, the district in question was entitled to such two members. The exception at the end of the proviso that "one such nomination may be made for the same magisterial district wherein only one such already elected or otherwise qualified member resides and will continue to hold office as aforesaid" was certainly intended to mean the nomination for which, earlier in the section, it was provided that two candidates could be nominated, when it expressly provided that two of such members should be nominated as party candidates. Of course we are entitled to read the entire section to reach the meaning intended. At this point it is not improper to note, that members of a Board of Education are not selected in

a primary election, but in the general election which follows; and the right to a place on the general election ballot, where no express statutory inhibition exists, should be determined by the vote cast for the contenders for the nomination in the primary. Furthermore, sound public policy requires that in all elections the voters be given the opportunity to make a choice in the general election, as between those receiving the highest number of votes in the primary, and, where possible, statutes should be interpreted to provide that opportunity.

This was the situation when the non-partisan method of selecting the members of the Board of Education was adopted by the enactment of Chapter 42, Acts of the Legislature, 1941. Section 1 of Article 5 of the Act provides:

> "Each county school district shall be under the supervision and control of a county board of education, which shall be composed of five members, nominated and elected by the voters of the respective county, without reference to political party affiliation. No more than two members shall be elected from the same magisterial district."

The act then goes on to provide how primary nominees may be selected, and Section 22a of Article 4 of the act provides:

> "There shall be no more than two nominees for each position sought on the respective county board of education except in case of a tie vote. The person who receives the greatest number of votes and the person who receives the next greatest number of votes for each position to be voted upon as listed on the ballot shall be deemed nominated for that respective position. *Provided,* That in case there is only one candidate for such a position, that candidate shall be deemed nominated.
>
> If there is more than one position to be filled for the office of county board of education, the nominations for each additional position shall go to the two persons receiving the next highest respective number of votes."

This left the situation with respect to nominations exactly as it was under Chapter 57 of the Acts of 1939, and no mention of that act was made in Chapter 42 of the Acts of 1941. From this, we think that at the time of the enactment of the 1941 Act, there was no purpose or intent on the part of the legislature to make any change in the method of nomination, although, possibly through oversight, there then existed a law providing for the election of members of the County Boards of Education on a nonpartisan ballot, and a statute authorizing the nomination of partisan candidates for such office.

We think it was this situation which prompted the enactment of Chapter 48 of the Acts of 1943, which amends Code, 3-4-5, and which is the section covered by Chapter 57 of the Acts of 1939. This section was amended to include judicial officers among those to be nominated in the primary; but it also amended the proviso in relation to the nominees for members of Boards of Education, and this proviso was made to read as follows:

"*Provided further,* That with respect to nominations of members of a county board of education, no more than two *of such members shall be nominated* from the same magisterial district where more than two such members are to be nominated at any primary election, and if more than two persons residing in the same district shall receive the greater number of votes cast at such primary election, then only the two of such persons receiving the highest number shall be declared nominated, and the person or persons living in another district who shall receive the next highest or two highest number of votes, as the case may be, shall be declared so nominated, and so on to the next highest in another district; and in no event shall any such candidate or candidates be nominated from the same magisterial district wherein two already elected or otherwise qualified members of such board of education reside and who will continue to hold office after the beginning of the term for which such nomination or nominations are made, except that, *one such*

*nomination* may be made for the same magisterial district wherein only one of such already elected or otherwise qualified member resides and will continue to hold office as aforesaid." (Italics supplied)

It will be noted that the only important change is the elimination of all reference to "party candidates" or "candidates of their party", making the act conform to the non-partisan election statutes enacted by the Legislature of 1941. We do not think anything more was intended. If more was intended, the legislature could have found words to clearly express its intentions, instead of leaving the statute as it was, except in the particulars mentioned above. As we view the matter, what was intended, was to leave the 1939 Statutes in full force and effect, as to the number of persons who might be nominated from any magisterial district, and not to restrict the choice of the voters in the general election as to who should be selected for members of the board, so long as the general provisions of the law, limiting the number of members to which any magisterial district was entitled, was not violated.

It is Chapter 48 of the Acts of 1941 which gives rise to this controversy. Relying thereon, we are asked by the intervening petitioners, King and Cook, to hold that the legislature intended to provide that in a magisterial district where there is a holdover member of the board, only one person may be nominated from that district to fill the position, for which the district is entitled to compete with other districts of the county in the general election. On the other hand, the relator and the intervening petitioner, Evans, take the position that, considering all of the several enactments mentioned above, each district similarly situated may nominate two candidates to be voted upon in the general election; and that raises the question which is the meat of this controversy.

We hold that the relator is entitled to the writ prayed for in his petition; and so holding, it follows that the relief prayed for by the intervening petitioner, Evans,

should be granted. We hold that the provision of Chapter 48, Acts of the Legislature of 1943, quoted above, properly interpreted in connection with other statutes quoted or referred to, was not intended to deprive any magisterial district of the right to have placed on the general election ticket the names of two persons for each six-year term for which such district had a right to compete with other districts; and that the language therein " * * * with respect to nominations of members of a county board of education, no more than two of such members shall be nominated from the same magisterial district where more than two such members are to be nominated at any primary election, * * * " was merely intended to limit nominations, so that in no event could any county magisterial district nominate candidates for more than two places on the board. We do not think it was intended to limit any district from nominating two candidates for each term to which the district might be entitled, in the event of either of its two candidates securing a majority vote therefor. That is what Chapter 57 of the Acts of 1939 permitted, and that is what Section 22a of Chapter 42 of the Acts of 1941 permits. We do not think that Chapter 48 of the Acts of 1943, was intended to restrict or change either of the said enactments in that regard. If there be any conflict between the Acts of 1941 and 1943, they may be easily reconciled, when considered in the light of other statutes, particularly the Act of 1939. It is elemental, that where there is seeming conflict in statutes the courts will, if possible, reconcile and give effect to both. In this case this can be done by holding that by a nomination for a particular term is meant the selection of two persons in the primary to compete for that term, as the 1939 Act evidently intended should be done; and where there are two terms to be filled, four persons may be selected therefor, not more than two of whom may be from the magisterial district having a holdover member, as is the case here with Charleston and Loudon Districts. The other nominations must go to other districts, and only four persons may be

nominated. Applying this reasoning to the case presented, Charleston District having a holdover, only two persons may be nominated, and Morgan, and Thomas, the relator, having received the highest number of votes, in the order named, are nominated. This exhausts the right of Charleston Magisterial District, and Mrs. Dale Thomas is automatically excluded, and the other nominees must come from other districts. Snyder, from Big Sandy District, receiving the third highest number of votes, is nominated. Excluding Mrs. Thomas, intervening petitioner, Evans, residing in Loudon District, received the next highest number of votes, and is nominated, for the reason that McCabe being the only other nominee from Loudon District, one other person may be nominated from that district. This fills up the ticket, and, under the statute, automatically excludes the intervening petitioners, Cook and King. Cook and King would only be entitled to be certified as nominees should we hold that Charleston and Loudon Magisterial Districts were each entitled to only one nomination. But holding, as we do, that these districts are each entitled to two nominations, the way is open for the nomination of both the relator, Thomas, and the intervening petitioner, Evans. The fact that only one member may be elected from Charleston and Loudon Magisterial Districts, under the ruling of this Court in *Orndorff* v. *Potter*, 125 W. Va. 785, 25 S. E. 2d 911, and *Miller* v. *Board of Education*, 126 W. Va. 248, 27 S. E. 2d 599, is recognized; but this does not affect the right of the parties named above to have their nominations certified, and their names placed on the non-partisan ballot in the general election.

The statutes we have discussed, while, of course, not so intended, are well calculated to confuse; and they leave the Court no little latitude in determining the intention of the legislature. In none of the enactments considered are there references to other statutes. If one statute was intended to repeal another, it is by implication only. Repeals by implication are not favored, and courts, in such cases, will endeavor to reconcile them. This we

have attempted to do here. In so doing, we have not lost sight of the principle that, where possible, the will of the majority of the voters should be made effective. Save only the case of Mrs. Dale Thomas, the persons we hold to be entitled to the nominations, are the persons who receive the highest number of votes; and Mrs. Thomas is required to yield to Evans under the imperative provisions of all of the statutes considered. We think we are justified in implying to the legislature an intent to give effect to the will of the majority; and only in cases of an inescapable statutory provision to the contrary, should that presumed intent be disregarded. Then, the people are entitled to be given a voice as between the persons who received the highest number of votes in the primary, from wherever they may come, so long as the terms, purposes and intention of the statutes are not violated. Only a few votes separated Morgan and the relator, Thomas, in the primary, and apparently these two men were highly favored by the voters of the county for one of the terms to which Charleston Magisterial District is entitled. We think the entire county should be given an opportunity to vote as between these two men receiving the highest number of votes—not that either will necessarily be elected, and only one of them can be,—and thus compare them with the other nominees for the same term, coming from other districts of the county.

Another consideration comes to mind. No question is raised in this proceeding as to the right of the magisterial districts of Kanawha County, other than Charleston and Loudon, to nominate two candidates. Indeed, the prayers of the intervening petitioners, Cook and King, coming, as they do, from Big Sandy and Cabin Creek Districts, respectively, proceed on the theory that those districts are entitled to two nominations, because undoubtedly Snyder is nominated from Big Sandy, and Shonk is nominated from Cabin Creek. It seems strange that we should be asked to attribute to the legislature an intent to frame a law that would allow certain mag-

isterial districts of the county to nominate two candidates, and limit other districts to one candidate, as is sought to be done in this case. Admittedly, such considerations should. not control, as against plain statutory provisions, and we give full recognition to the fact that the Act of 1943 is the latest legislative directive; but where, as in this case, the intent of the legislature is not clearly expressed, and there is confusion and doubt, we think we are warranted in adopting that solution which most clearly follows the expressed will of the voting public in the primary, and give to that same public the right to select a board from among those who received the highest number of votes in the primary. Considering all of the statutes together, we think this view is justified, and in maintaining it, and making it effective, we can see no prejudice to the public. Other statutes, and the decisions of this Court, guard against the danger of any one magisterial district securing more than two members of the Board of Education; and so long as that principle is maintained, we can see no public interest which requires the restriction on nominations which the intervening petitioners would have us impose. We think public interest, and sound public policy as well, is served by construing the statutes in accordance with what we think was the intent of the legislature to allow the majority vote to control nominations, so long as the fundamental rule against control of the board by one magisterial district is not violated.

An order is entered awarding a peremptory writ of mandamus against the respondents, the Board of Canvassers of Kanawha County, requiring them to certify the nomination of the relator, Andrew S. Thomas, Jr., and Dr. B. B. Evans as candidates for members of the Board of Education of Kanawha County in the general election to be held November next; and awarding a like writ against the Board of Ballot Commissioners of Kanawha County, requiring them to place the names of said two persons upon the non-partisan ballot, as can-

didates for members of the Board of Education of said county, to be voted upon in said general election, and also denying the prayer of the intervening petitioners, Elbert R. Cook and Frances S. King.

*Writs awarded to relator and Dr. B. B. Evans.*

*Writs denied as to Elbert R. Cook and Frances S. King.*

ROSE, PRESIDENT, dissenting:

In my judgment Chapter 48 of the Acts of the Legislature of 1943, clearly limits the nomination of candidates for membership on a Board of Education so that there can be: (1) two nominees, and no more, from a district in which there is no present member who will continue as such into the term for which the nominations are to be made; (2) one nominee, and no more, from a district from which there will be one such member held over; and (3) no nominees from a district from which there will be two such holdovers. This view of the statute has been officially announced by the Attorney General of the State and appears to me to be legally unavoidable.

The sole subject matter of the proviso under consideration is the limitation of the number of nominations which can be made from one magisterial district. This is self-evident. The proviso enumerates the three, and the only three, situations which can possibly arise: districts with no holdovers, districts with one holdover, and districts with two holdovers; and then makes specific provisions applicable to each. True, the language of the act is prohibitive in the first two cases and permissive in the third, but this grammatical form is accounted for by the fact that the permissive provision is set against, and in contrast to, a previous prohibition. Only one candidate can be nominated from a district from which there will be one holdover. The meaning is thus perfectly

clear. But if there is considered to be any doubt or ambiguity in the language used, all canons of construction lead to the same interpretation.

The permission to make one nomination from a district with only one holdover operates to deny the right to make more than one nomination. Everyday reasoning and a universally recognized rule of construction will so interpret it. "The maxim, 'expressio unius est exclusio alterius', is especially applicable in the construction and interpretation of statutes." *Tate* v. *Ogg,* 170 Va. 95, 195 S. E. 496. This maxim has been frequently so utilized by this Court. *Taylor* v. *Taylor,* 66 W. Va. 238, 66 S. E. 690; *Neale* v. *County Court of Wood County,* 43 W. Va. 90, 27 S. E. 370; *Brannon* v. *County Court of Kanawha County,* 33 W. Va. 789, 11 S. E. 34; *State* v. *Gilman,* 33 W. Va. 146, 10 S. E. 283.

The situation sought to be remedied by the Act of 1943 is well known. The Act of 1941 proved to be largely impracticable, often resulting in the choosing of a nominee, who, when elected, could not serve because of the statute forbidding more than two members of the Board of Education from one district, and at the same time resulting in no election at all for certain vacancies to be filled. *State ex rel. Miller* v. *Board of Education,* 126 W. Va. 248, 27 S. E. 2d 599; *Orndorff* v. *Potter,* 125 W. Va. 785, 25 S. E. 2d 911. This defect in the statute which needed remedying may be looked to in construing the present statute, and thus impel to a construction which will operate as a remedy, not only to a part of the evil, but the whole thereof. *Bloyd* v. *Scroggins,* 123 W. Va. 241, 15 S. E. 2d 600; *Shipley* v. *Jefferson County,* 72 W. Va. 656, 78 S. E. 792; *Wellsburg and State Line Railroad Company* v. *Pan Handle Traction Company,* 56 W. Va. 18, 48 S. E. 746; *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690.

The sole purpose of primary and general elections is to choose public officers. Hence, that construction of election statutes should be preferred which will produce

this result, rather than one which may, and probably will, be abortive. We may look to the end manifestly sought by the Legislature to determine the meaning of a statute. *Hall* v. *Baylous,* 109 W. Va. 1, 153 S. E. 293.

The provision that one nomination may be made from a district having one holdover is a limitation to one nominee, or it is nothing. No statutory permission to make such single nomination is necessary; this right already existed. It will not be presumed that the Legislature inserted this provision for nothing. Every provision of a statute must be given some meaning, if possible. *State* v. *Jackson,* 120 W. Va. 521, 199 S. E. 876; *Ex Parte James Watson,* 82 W. Va. 201, 95 S. E. 648.

Thus the statute, standing alone, seems to bear no possible interpretation except that given to it by the Attorney General.

But it is said that, as this statute did not also repeal the Act of 1941 directly, a sufficient part of that statute survives against implied repeal to dilute and modify the meaning of the Act of 1943. But repeals by implication have always been recognized. If a later statute is repugnant to a part or all of a former one, that former statute is repealed *pro tanto. State* v. *Michaels,* 103 W. Va. 634, 138 S. E. 199; *Board of Education* v. *County Court of Tyler County,* 77 W. Va. 523, 87 S. E. 870; *Grant* v. *Baltimore & Ohio Railroad Co.,* 66 W. Va. 175, 66 S. E. 709; *Shields and Preston* v. *Bennett,* 8 W. Va. 74. And if a later statute covers completely its subject, all earlier statutes thereon are superseded. *State* v. *Snyder,* 89 W. Va. 96, 108 S. E. 588; *Farmers & Merchants Bank of Reedsville* v. *Kingwood National Bank,* 85 W. Va. 371, 101 S. E. 734; *Overton* v. *Heckathorn,* 81 W. Va. 640, 95 S. E. 82; *Cunningham* v. *Cokely,* 79 W. Va. 60, 90 S. E. 546; *Ex Parte Philip Gilbert,* 78 W. Va. 658, 90 S. E. 111; *Brown* v. *County Court of Preston County,* 78 W. Va. 644, 90 S. E. 166.

It is perfectly clear, I think, that the Act of 1943, providing definite limitation to the number of nominees

which may be made from districts, deals completely with that subject—a very narrow subject, but, nevertheless, a subject. It must, therefore, be accepted at its full face value, and all earlier statutory provisions on the subject must be considered as superseded. Also, there can be no doubt that the provisions of the Act of 1943, giving an express numerical limit to nominations from districts, is repugnant absolutely to the provisions of the Act of 1941, which authorizes, or, at least, permits, two such nominations, regardless of one holdover member from a district. On either principle, the Act of 1943 must be considered as superseding, not as being in any way modified by, the Act of 1941.

It is suggested, however, that the Act of 1943, insofar as it relates to nominees for membership on a Board of Education, is, at law, a mere amendment and reenactment of the Act of 1939, and, therefore, when so amended and reenacted, takes effect in some sort of *nunc pro tunc* manner as of the date of the original 1939 Act, and hence is dominated and modified by the intervening Act of 1941. This rather startling proposition finds expression in Syllabus 3 of the case of *Board of Education* v. *County Court of Tyler County, supra,* which reads as follows:

> "Generally, where a later law is merely a re-enactment of the former it will not be regarded as repealing the intermediate act, which qualified and limited it, but the intermediate act will be deemed to remain in force qualifying or modifying the new act as it did the first."

Fortunately, however, this doctrine is tempered by Syllabus 4 of the same case, in the following language:

> "But an exception to the general rule lastly stated is that when the intermediate act and the new or re-enacted law are in irreconcilable conflict, the latter will prevail over the intermediate act, under the general rules above stated, as being the last expression of the legislative intent."

We think there can be no doubt that Point 4 of this syllabus, and not Point 3, covers squarely the case at bar, and that, therefore, the Act of 1943 must be considered as "the last expression of the legislative intent".

It follows, therefore, that the petition of the relator, Thomas, should be rejected. Of course, Mrs. Dale Thomas, coming from Charleston District, is likewise barred of nomination. All agree that N. N. Snyder, of Big Sandy District, must be considered as having been nominated. In Loudon District, however, there is one holdover member of the Board, and one nominee at this primary election for a short term who is conceded, by all parties in this case and by all members of this Court, to be nominated. This, in my judgment, makes impossible the nomination of any candidate for a long term from that district. It is true that Charles P. McCabe, the candidate for the short term, and B. B. Evans and W. O. Morris, from the same district, who were candidates for the long term, did not run against each other; but McCabe was unquestionably nominated, having both a majority of the votes for the nomination for which he was a candidate and the necessary residence, while Evans and Morris are only secondarily nominated, having no claim except by virtue of the fact that others with more votes than themselves had become disqualified. The unquestioned nomination of McCabe exhausts the number of nominations to which Loudon District was, by law, entitled, thus eliminating Evans and Morris. The two candidates having the next highest number of votes after those mentioned are, therefore, Elbert R. Cook, of Big Sandy District, and Frances S. King, of Cabin Creek District, in neither of which districts is there a holdover operating as a bar to nomination. I, therefore, would award the writ of mandamus sought by these candidates.

Judge Riley authorizes me to state that he joins in this note.