STATE OF WEST VIRGINIA *ex rel.*

WHEELING DOWNS RACING ASSOCIATION

*v.*

W. P. C. PERRY, JOSEPH P. CONDRY, AND HARRY WALLACE, MEMBERS OF THE WEST VIRGINIA RACING COMMISSION, AND WEST VIRGINIA RACING COMMISSION

(No. 12282)

Submitted October 15, 1963.    Decided October 29, 1963.

*Browning, Judge,* not participating.

*Clarence E. Martin, Jr.,* for relator.

C. *Donald Robertson,* Attorney General, *Thomas B. Yost,* Assistant Attorney General, for respondents.

CALHOUN, JUDGE:

In this original proceeding in mandamus, the relator, Wheeling Downs Racing Association, a corporation, seeks to have the Court require the respondents, West Virginia Racing Commission and its individual members, to remove a certain restriction imposed upon a license issued by the commission to the relator. The case calls for a consideration and application of language contained in Chapter 192, Article 23, Section 7 of the Acts of the Legislature, Regular Session, 1963, which embodies a revision and reenactment of a preexisting statute appearing as Chapter 19, Article 23, Section 7 of the Code, 1931, as amended.

The respondents filed an answer to the petition but there is no material dispute in relation to the facts which constitute the background of the case. For many years the relator operated a horse race track, known as Wheeling Downs, in Ohio County. Certain facilities essential to the operation of that race track were destroyed by fire on December 16, 1962. In these circumstances the relator leased the horse race track facilities of Waterford Park, Inc., a corporation, in Hancock County, and applied to the West Virginia Racing Commission for a license to conduct thoroughbred horse races at that place.

On September 3, 1963, a license was issued to the relator to conduct thoroughbred horse races on the property of Waterford Park, Inc., on certain dates aggregating sixty-seven days, during September, October, November and December, 1963. The license was issued subject, however, to a condition that the relator, in conducting races at the new location, pay to the West Virginia Racing Commission a tax of five and three-fourths percent of the total contribution to all pari-mutuel pools conducted or made at the new location in Hancock County. Such computation of the tax under the 1963 statute is based on an average daily pari-mutuel pool of more than $150,000 for the 1962 calendar year. It is agreed that the average daily pari-mutuel pool at the relator's track at Wheeling Downs in Ohio County was less than $150,000 during the 1962 calendar year; and that such average daily pool for the same calendar year at Waterford Park, Inc., in Hancock County was considerably in excess of $150,000.

It is the contention of the relator in this case that the tax for its 1963 operations at Waterford Park should be computed, under the applicable statute, upon the basis of the average daily pari-mutuel pool at Wheeling Downs during the 1962 calendar year, rather than upon the average daily pari-mutuel pool during that calendar year at Waterford Park, Inc. This calls for a determination by the Court of the proper rate of tax under the 1963 statute in the circumstances outlined above.

Prior to July 1, 1963, the effective date of the amended and reenacted statute, the tax rate provided by statute was six percent of the pari-mutuel pools, regardless of the amount, at all horse race tracks within the state. The 1963 statute reduced the rate to five and three-fourths percent and inserted a proviso affording a still more favorable tax rate to horse race tracks "having an average daily pari-mutuel pool of one hundred fifty thousand dollars or less, per day" during the preceding calendar year. The statute, as amended and reenacted, subject to some omissions which are believed not to be pertinent to this case, is as follows:

"Any person operating thoroughbred or running type racing at any horse race track one mile or more in length shall pay each day upon which horse races are run, a license tax of five hundred dollars; any race track less than one mile in length shall pay for each day upon which horse races are run a license tax of two hundred fifty dollars: * * * Any person licensed by the commission to conduct thoroughbred or running type racing and to permit and conduct pari-mutuel wagering under this article shall, in addition to the aforementioned tax, pay to the racing commission of the state of West Virginia a tax of five and three-fourths percent of the total contribution to all pari-mutuel pools conducted or made at any and every race meeting licensed under this article. * * * *Provided, however,* That a person operating any duly licensed horse race track, having an average daily pari-mutuel pool of one hundred fifty thousand dollars or less, per day, for the licensed race meetings, of the preceding calendar year, shall, in lieu of payment of the five and three-fourths percent tax, paid to the state, from pari-mutuel pools, as above provided, be permitted to conduct pari-mutuel wagering at such horse race track, under this article, on the basis of a daily tax which is fixed as follows: On a daily pari-mutuel pool not exceeding one hundred fifty thousand dollars the daily tax shall be four thousand dollars plus five and three-fourths per cent of the daily pari-mutuel pool, if any, in excess of one hundred fifty thousand dollars.

\* \* \*

"When issuing any license under this article, the commission shall designate upon the face of the license, the kind or type of horse racing for which the same is issued, the number of days the licensee is permitted to conduct horse racing of any kind, the location of the place or track or enclosure at which the horse racing thereby permitted is to be conducted, and such other provisions and conditions as the commission may wish to prescribe; no kind or type of horse racing shall be conducted by a licensee other than that for which the license is issued."

The word "person", as used in the statute, includes corporations. Code, 1931, 2-2-10 (i). When the 1963 statute

was enacted, and also when it became effective, the Wheeling Downs horse race track was the only one in the state falling in the preferred classification provided for in the statute. While the relator is currently conducting races at Waterford Park, and while it is now paying a tax computed in accordance with the higher classification, it has from the outset paid the higher rate under protest.

Code, 1931, 19-23-1, as amended, created the West Virginia Racing Commission; provides for the appointment of the three members thereof; prescribes their duties and the length of their terms of office; and provides for their compensation.

Mandamus lies to require a public official to perform a nondiscretionary legal duty. *State ex rel. Williams* v. *Board of Trustees*, 147 W. Va. 795, pt. 1 syl., 131 S. E. 2d 612; *W. E. Long Co., etc.* v. *Burdett*, 147 W. Va. 177, pt. 3 syl., 126 S. E. 2d 181; *State ex rel. Schenerlein* v. *City of Wheeling*, 144 W. Va. 434, pt. 2 syl., 108 S. E. 2d 788. See also *State ex rel. County Court of Cabell County* v. *Battle*, 147 W. Va. 841, 131 S. E. 2d 730; *State ex rel. Plymale* v. *City of Huntington*, 147 W. Va. 728, 131 S. E. 2d 160; *State ex rel. Cackowska* v. *Knapp*, 147 W. Va. 699, 130 S. E. 2d 204, 205; *State ex rel. Printing-Litho, Inc.* v. *Wilson*, 147 W. Va. 415, 128 S. E. 2d 449; *State ex rel. Harris* v. *MacCorkle*, 146 W. Va. 946, 123 S. E. 2d 888; *State ex rel. Lippert* v. *Gainer*, 146 W. Va. 840, 122 S. E. 2d 618; *State ex rel. Neal* v. *Barron*, 146 W. Va. 602, 120 S. E. 2d 702. Mandamus is a proper remedy to require the performance of nondiscretionary legal duties by various governmental agencies or bodies. 12 M. J., Mandamus, Sections 14-19, pages 357-373; *State ex rel. Sheppe* v. *W. Va. Board of Dental Examiners*, 147 W. Va. 473, 128 S. E. 2d 620; *State ex rel. Duke* v. *O'Brien et al.*, 145 W. Va. 600, 117 S. E. 2d 353 (board of ballot commissioners); *Puritan Coal Corp.* v. *Davis, Director of Unemployment Compensation*, 130 W. Va. 20, 42 S. E. 2d 807; *Village of Bridgeport, etc.* v. *Public Service Commission*, 125 W. Va. 342, 24 S. E. 2d 285.

Counsel for the respondents contend that mandamus will not lie in this case because of the fact that provision

is made by Code, 1931, 11-1-2a, as amended, for refund of improperly paid taxes. Mandamus will lie, notwithstanding the existence of another remedy, if such other remedy is inadequate or is not equally beneficial, convenient and effective. *State ex rel. Myers v. Straughan,* 144 W. Va. 452, pt. 1 syl., 108 S. E. 2d 565; *State ex rel, Vance* v. *Arthur,* 142 W. Va. 737, pt. 5 syl., 98 S. E. 2d 418; *Stowers* v. *Blackburn,* 141 W. Va. 328, pt. 2 syl., 90 S. E. 2d 277. See also 12 M. J., Mandamus, Section 9, page 346; 34 Am. Jur., Mandamus, Section 42, page 835; 55 C. J. S., Mandamus, Section 17b, page 47.

It is quite conceivable that the current racing season would end before the relator could pursue to a final determination the remedy provided by the statute to which reference has been made. If it is a fact that the respondents are presently requiring the relator on each race day to pay an excessive and unlawful tax, the statutory remedy would not be equally beneficial, convenient and effective as a proceeding in mandamus. The relator should not be required, from the standpoint of justice and right, to pay the sizeable sums of money which would be involved if payment of such sums is, in fact, being exacted unlawfully in part; and it is not a sufficient answer to say that the relator, through a course of litigation, delay and expense, might ultimately be entitled to a refund pursuant to the provisions of the statute. The Court, therefore, holds that mandamus is proper in this case.

The proviso in the statute which authorizes the lower rate of tax does not create an exemption. On the contrary, the statute merely defines two different classifications of horse race tracks for tax purposes. We look to the statute in its entirety in order to ascertain the legislative intent as it relates to the proviso. 82 C. J. S., Statutes, Section 381b, page 884; 50 Am. Jur., Statutes, Section 435, page 456, and Section 440, page 460; *Parkins* v. *Londeree,* 146 W. Va. 1051, pt. 1 syl., 124 S. E. 2d 471; *State ex rel. Thomas* v. *Board of Ballot Commissioners,* 127 W. Va. 18, 22, 31 S. E. 2d 328, 331. We are unable to perceive, however, that any other portion of the statute in any way affects the intent clearly expressed in the proviso itself.

The language preceding the proviso provides in general terms for a tax at the rate of five and three-fourths percent to be paid by "Any person licensed by the commission to conduct thoroughbred or running type racing and to permit and conduct pari-mutuel wagering * * *." The proviso defines the classification of race tracks which may be permitted to pay the more favorable or lesser rate of tax. The proviso is complete in itself. No other portion of the statute adds to, detracts from, modifies or otherwise affects the intent and purpose clearly expressed in the proviso.

The pertinent language of the proviso, with emphasis supplied, is as follows: *"Provided, however, That a person operating any duly licensed horse race track, having an average daily pari-mutuel pool of one hundred fifty thousand dollars or less, per day, for the licensed race meetings, of the preceding calendar year,* shall in lieu of payment of the five and three-fourths percent tax, paid to the state, from pari-mutuel pools, as above provided, be permitted to conduct pari-mutuel wagering *at such horse race track,* under this article, on the basis of a daily tax which is fixed as follows: * * *."

From the language of the proviso it is clear that the "person" entitled to pay the tax at the lower rate is "a person operating any * * * horse race track, having an average daily pari-mutuel pool of one hundred fifty thousand dollars or less, per day, * * * of the preceding calendar year, * * *." The language refers to a person who, during the current calendar year is operating *a track* which had an experience, during the preceding calendar year, which would qualify the operator of the track to pay the lower rate of tax during the current calendar year. It does not appear from the record that anybody is currently operating a track in this state which had an experience, during the preceding calendar year, which would qualify the operator for the lower rate of tax. Stated another way, the relator is not presently operating a horse race track "having an average daily pari-mutuel pool of one hundred fifty thousand dollars or less" for the 1962 calendar year. Admittedly, the horse race track which the

relator is currently operating had an average daily pari-mutuel pool of more than one hundred fifty thousand dollars during the 1962 calendar year. For the reasons stated, we believe the proviso clearly defines the "person" entitled to pay a tax at the more favorable rate.

The proviso states that a person operating a horse race track having an average daily pari-mutuel pool of one hundred fifty thousand dollars or less per day for the preceding calendar year shall be permitted to conduct pari-mutuel wagering "at such horse race track" at the lesser or more favorable tax rate. The words "at such horse race track" obviously refer to the track at which the experience was compiled during the preceding calendar year. For reasons stated, we believe the language of the proviso clearly defines the "person" and also the "horse race track" which must be combined in a single racing operation in order that the person operating the track may be entitled to pay his tax in accordance with the more favorable classification.

A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts, but will be given full force and effect. *State ex rel. Hardesty* v. *Aracoma-Chief Logan, etc.*, 147 W. Va. 645, pt. 1 syl., 129 S. E. 2d 921; *Moore* v. *Hardesty*, 147 W. Va. 611, pt. 1 syl., 129 S. E. 2d 722; *Terry* v. *State Compensation Commissioner*, 147 W. Va. 529, pt. 1 syl., 129 S. E. 2d 529; *Cotiga Development Co.* v *United Fuel Gas Co.*, 147 W. Va. 484, 128 S. E. 2d 626, 631; *In re Hillcrest Memorial Gardens, Inc.*, 146 W. Va. 337, pt. 5 syl., 119 S. E. 2d 753.

For reasons stated, the writ prayed for is denied and the rule heretofore issued is discharged.

*Writ denied.*