I am authorized to state that Justice McGRAW joins me in this dissent.

516 S.E.2d 30

**STATE of West Virginia ex rel. DANIEL M., a Juvenile, Petitioner,**

v.

**The WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, and Joan E. Ohl, Secretary, West Virginia Department of Health and Human Resources, Respondents.**

No. 25796.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 1999.

Decided May 14, 1999.

---

Susan J. MacDonald, Esq., Public Defender Corporation, Charles Town, West Virginia, Attorney for the Petitioner.

Darrell V. McGraw, Jr., Esq., Attorney General, Barbara L. Baxter, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for WVDH & HR.

MAYNARD, Justice: ·

The petitioner, Daniel M., in this original proceeding in mandamus and/or prohibition seeks to prohibit the respondent, Joan Ohl, Secretary of the Department of Health and Human Resources (DHHR), from withholding funding and to compel DHHR to pay for his placement at Charter Behavioral Health Systems at Piedmont (Piedmont). Because the circuit court properly ordered the out-of-state placement and because it is the duty of DHHR to fund the placement, a writ of mandamus is granted.[1]

The facts are not in dispute. Daniel M. is a fifteen year old runaway who was adjudged guilty of three counts of felony arson. Daniel insists he drinks alcohol, abuses Ritalin, and uses drugs, including marijuana and acid. He has, nonetheless, twice tested negative for drugs; he contends this is so because he flushed his system with pickle juice and water.

---

1. This case was pleaded in the alternative. Daniel M. is seeking either mandamus to compel DHHR to provide funding for his out-of-state placement and/or prohibition to prohibit DHHR from withholding funding for the placement. In either case, the relief sought is the same; however, mandamus is the proper vehicle since it lies to require a public official to perform a nondiscretionary legal duty. Syllabus Point 1, *State ex rel. Wheeling Downs Racing Ass'n v. Perry*, 148 W.Va. 68, 132 S.E.2d 922 (1963). Accordingly, we find it is not necessary to award a writ of prohibition.

On October 8, 1998, Daniel M.'s multidisciplinary team (MDT) [2] held a meeting to discuss placement. Believing Daniel would benefit from a therapeutic setting, his probation officer recommended placement at Piedmont, a locked inpatient psychiatric facility located in the State of Virginia.[3] Daniel's mother did not agree Piedmont was the best placement for Daniel due to treatment he received during a previous stay at the facility. His mother told the team she complained to the facility after Daniel called her collect several times late at night; Daniel was then given sleeping pills. Nonetheless, after discussing possible placements at the MDT meeting, the team, noting the objection of DHHR's case worker, recommended placement at Piedmont. The MDT report gives several reasons for this decision. The report states that Daniel will be able to continue day school at Piedmont once he is released from the facility; Piedmont is located close to Daniel's family; there is no waiting list; the facility accepts arson charges; and Piedmont is a locked therapeutic facility.

Daniel was adjudged delinquent on October 19, 1998. A dispositional hearing was held on November 2, 1998. Noting DHHR's objection, the court found "that Piedmont is the only facility available willing to accept a juvenile involved with explosives and/or arson." The court then ordered that Daniel be placed at Piedmont[4] and that "the West Virginia Department of Health and Human Resources shall pay the normal and customary per diem as required by the above named facility[.]" DHHR chose not to appeal the circuit court's order; however, Daniel M. states that as far as he can determine DHHR has refused to pay for his placement. Therefore, Daniel M. seeks a writ of prohibition/mandamus against Joan Ohl as Secretary of DHHR, prohibiting the department

from withholding funding and directing the department to pay for his placement at Piedmont. On January 6, 1999, this Court issued a rule to show cause in prohibition and/or mandamus returnable February 16, 1999.

In response to Daniel M.'s petition, DHHR contends that Piedmont is not the appropriate placement for Daniel M. because only nine months prior to the court rendering its order which is at issue here, the facility responded to the juvenile by medicating him and discharging him after one month, at which time he immediately returned to his aggressive and criminal behavior.[5] DHHR believes Daniel M. should be placed in a correctional setting rather than a therapeutic environment and in support of this belief states that: (1) federal Medicaid dollars cannot be used to pay for Daniel's placement, therefore, state funding should also be denied; (2) three psychological evaluations have each concluded that Daniel M. has behavior problems and will not cooperate with or remain in a rehabilitative treatment facility; and (3) since his prior discharge from Piedmont, Daniel's criminal behavior has escalated. DHHR believes Daniel M. should be provided treatment at Salem, a correctional facility operated by the West Virginia Department of Military Affairs and Public Safety, Division of Juvenile Services.

■ DHHR expends much time and effort in arguing that since federal Medicaid money cannot be used to assist in funding Daniel M.'s placement at Piedmont, state taxpayer money should not be spent to send Daniel M. to this facility a second time. Federal law mandates the procedure which must be followed before Medicaid will reimburse the State for inpatient services in hospitals, mental hospitals, and intermediate care facilities. DHHR must verify the medical necessity of these services by contracting with a third

2. The MDT consisted of Daniel's defense attorney, his mother, an assistant prosecuting attorney, his probation officer, and a youth services social worker.

3. The information submitted to this Court seems to indicate no other therapeutic facility would accept a juvenile charged with arson.

4. Pending transfer to Piedmont, Daniel was held at the hardware secure Eastern Regional Juvenile Detention Center. While being held there, he attempted to escape.

5. The discharge plan from Piedmont lists Daniel M.'s admission date as December 31, 1997 and discharge date as February 2, 1998. During oral argument before this Court, Daniel M.'s counsel informed us that this one month stay was for evaluation and not treatment.

party independent physician review agency. In other words, pursuant to 42 C.F.R. § 456.1(b)(2) (1998),[6] Medicaid dollars may only be utilized for payment of inpatient treatment received by juveniles after the independent agency has verified the medical necessity. The State is also required by federal law to have in effect a continuous program "of medical review that includes a medical evaluation of each individual's need for care in a mental hospital, a plan of care, and, where applicable, a plan of rehabilitation." 42 C.F.R. § 456.1(b)(3) (1998).

In accordance with federal law, DHHR has contracted with West Virginia Medical Institute (WVMI) to provide the mandated independent reviews. WVMI reviewed Daniel M.'s case. By letter dated November 30, 1998, WVMI informed DHHR that based on a "[p]hysician review of information regarding the current medical needs of the patient indicated above has determined that residential admission and services cannot be authorized." The letter goes on to explain that this means "that the requested care cannot be certified and may not be reimbursed by the Medicaid program. Further, the recipient cannot be held financially responsible for the services provided." WVMI recommended "placement in a highly structured group home and intensive outpatient treatment through a local community health center."

DHHR presents a good argument in terms of funding and this Court is very sensitive to the costs involved in placing juveniles in out-of-state facilities. However, disposition of juvenile delinquents is controlled by W.Va. Code § 49–5–13 and nowhere in that code section do we find a directive stating that a juvenile cannot be placed in a treatment facility if funding under the Medicaid program is denied. DHHR cannot rely on this argument and choose to challenge a circuit court's order by simply refusing to fund the placement; the proper place to raise the issue is in an appeal to this Court.

[redacted] There is no question that " 'West Virginia Code § 49–5–13(b) (Supp.1996) expressly grants authority to circuit courts to make facility-specific decisions concerning juvenile placements.' Syllabus point 1, *State ex rel. W.Va. DHHR v. Frazier*, 198 W.Va. 678, 482 S.E.2d 663 (1996)." Syllabus Point 3, *State ex rel. Ohl v. Egnor*, 201 W.Va. 777, 500 S.E.2d 890 (1997). DHHR does not dispute the circuit court's authority to designate Daniel M.'s placement but argues the court should have commenced involuntary commitment proceedings pursuant to W.Va.Code § 49–5–13(b)(6) (1997), which states:

> (b) Following the adjudication, the court shall conduct the dispositional proceeding, giving all parties an opportunity to be heard. In disposition the court shall not be limited to the relief sought in the petition and shall, in electing from the following alternatives, consider the best interests of the juvenile and the welfare of the public:
>
> (6) After a hearing conducted under the procedures set out in subsections (c) and (d), section four [§ 27–5–4(c) and (d) ], article five, chapter twenty-seven of this code, commit the juvenile to a mental health facility in accordance with the juvenile's treatment plan; the director may release a juvenile and return him to the court for further disposition. The order shall state

6. 42 C.F.R. § 456.1(b)(2) (1998) states in relevant part:

(2) *Penalty for failure to have an effective program to control utilization of institutional services.* Section 1903(g)(1) provides for a reduction in the amount of Federal Medicaid funds paid to a State for long-stay inpatient services if the State does not make a showing satisfactory to the Secretary that it has an effective program of control over utilization of those services. This penalty provision applies to inpatient services in hospitals, mental hospitals, and intermediate care facilities (ICF's). Specific requirements are:

(i) Under section 1903(g)(1)(A), a physician must certify at admission, and a physician (or physician assistant or nurse practitioner under the supervision of a physician) must periodically recertify, the individual's need for inpatient care.

(ii) Under section 1903(g)(1)(B), services must be furnished under a plan established and periodically evaluated by a physician.

(iii) Under section 1903(g)(1)(C), the State must have in effect a continuous program of review of utilization of care and services under section 1902(a)(30) whereby each admission is reviewed or screened in accordance with criteria established by medical and other professional personnel.

that continuation in the home is contrary to the best interests of the juvenile and why; and whether or not the state department made a reasonable effort to prevent the placement or that the emergency situation made such efforts unreasonable or impossible.

In reading the circuit court's disposition order, one can easily discern why the court did not institute an involuntary commitment proceeding. Daniel M.'s disposition did not take place under W.Va.Code § 49–5–13(b)(6). Instead the court ordered that Daniel M. be placed in an "appropriate facility for the treatment, instruction and rehabilitation of juveniles" pursuant to W.Va.Code § 49–5–13(b)(5) (1997), which reads as follows:

(b) Following the adjudication, the court shall conduct the dispositional proceeding, giving all parties an opportunity to be heard. In disposition the court shall not be limited to the relief sought in the petition and shall, in electing from the following alternatives, consider the best interests of the juvenile and the welfare of the public:

(5) Upon a finding that the best interests of the juvenile or the welfare of the public require it, and upon an adjudication of delinquency pursuant to subdivision (1), section four [§ 49–1–4(1)], article one of this chapter, the court may commit the juvenile to an industrial home, correctional institution for juveniles, or other appropriate facility for the treatment, instruction and rehabilitation of juveniles: Provided, That the court maintains discretion to consider alternative sentencing arrangements. Commitments shall not exceed the maximum term for which an adult could have been sentenced for the same offense. The order shall state that continuation in the home is contrary to the best interests of the juvenile and why; and whether or not the state department made a reasonable effort to prevent the placement or that the emergency situation made such efforts unreasonable or impossible[.]

The circuit court's order complies with all statutory requirements. The court found that "continuation in the home is contrary to the best interests and welfare of the child, and of the public, and that reasonable efforts have been made to prevent placement[.]" Daniel M. "was adjudicated a Delinquent and Incorrigible Youth[.]" The court then ordered that Daniel M. "be placed at Piedmont Behavioral Health System, to be returned to this Court for further disposition at a later time."

More importantly, the circuit court followed this Court's prior directive regarding the placement of juvenile delinquents outside the State of West Virginia. This Court previously said, " 'While a circuit court should give preference to in-state facilities for the placement of juveniles, if it determines that no in-state facility can provide the services and/or security necessary to deal with the juvenile's specific problems, then it may place the child in an out-of-state facility. In making an out-of-state placement, the circuit court shall make findings of fact with regard to the necessity for such placement.' Syllabus point 6, State ex rel. W.Va. DHHR v. Frazier, 198 W.Va. 678, 482 S.E.2d 663 (1996)." Syllabus Point 6, State ex rel. Ohl v. Egnor, 201 W.Va. 777, 500 S.E.2d 890 (1997). After noting the objection of DHHR, the circuit court specifically found "that Piedmont is the only facility available willing to accept a juvenile involved with explosives and/or arson." The court obviously believes Daniel M. needs "treatment, instruction and rehabilitation." No other facility is available to offer such "treatment, instruction and rehabilitation." We believe these findings show the necessity for placing Daniel M. in an out-of-state facility.

Judge Wilkes followed the statutory directives as well as the mandates of this Court in ordering Daniel M.'s placement and in ordering DHHR to pay for the placement. Once a circuit court enters a final disposition order that fully complies with W.Va.Code § 49–5–13(b) (1997) and State ex rel. Ohl v. Egnor, 201 W.Va. 777, 500 S.E.2d 890 (1997), DHHR cannot ignore or refuse to comply with the order. DHHR may seek relief by appealing the circuit court's order to this Court. DHHR failed to do so in this case.

As a result, DHHR's duty now is to fund the placement. The department has failed to perform its duty. "Mandamus lies to require

a public official to perform a nondiscretionary legal duty." Syllabus Point 1, *State ex rel. Wheeling Downs Racing Ass'n v. Perry*, 148 W.Va. 68, 132 S.E.2d 922 (1963). Also, "[m]andamus is a proper remedy to require the performance of nondiscretionary legal duties by various governmental agencies or bodies." (Citations omitted). *Id.* at 72, 132 S.E.2d at 925.

For the reasons stated herein, the writ of mandamus is granted.

Writ granted.