PURITAN COAL CORPORATION

*v.*

C. S. DAVIS, *Director Unemployment Compensation*

(No. 9923)

Submitted January 9, 1947. Decided March 18, 1947.

*Lang R. Slaven,* for petitioner.

*Leo Loeb,* for respondent.

HAYMOND, JUDGE:

The petitioner, Puritan Coal Corporation, seeks a writ of mandamus in this Court, to require the defendant, the

Honorable C. S. Davis, Director of the Department of Unemployment Compensation of West Virginia, to fix the rate of contribution for the petitioner to the unemployment compensation fund for the calendar year 1946 at 0.9 per cent and to accept settlement of its account for that year on that basis. Upon its petition, filed in this Court December 31, 1946, a rule was issued returnable January 8, 1947. On that day the defendant appeared and filed his demurrer and his answer, and this proceeding was argued and submitted for decision.

The facts are not disputed and questions of law only are involved.

The petitioner, a West Virginia corporation, is engaged in the operation of coal mines in Mingo County and is now, and for more than five years has been, an employer of labor subject to the provisions of the West Virginia Unemployment Compensation Law. For the calendar year 1945 its rate of contribution to the fund was fixed at 1.2 per cent. Until January 31, 1946, it appears to have complied with all the requirements of the statute and of the regulations of the director of the department. On that date, through inadvertence, it failed to file with the director its report of the amount of wages paid by it during the last quarter of 1945, and to make payment of its contribution to the fund for that period, which report and payment were, under regulations promulgated by the director, due on or before that date. Promptly upon discovery of the oversight by the petitioner, the report was filed and the payment was made on March 18, 1946. From and after that time the director was in possession of all data necessary to enable him to calculate and fix the rate of contribution to the fund by the petitioner for the calendar year 1946. On March 18, 1946, and since January 1, 1946, the assets of the fund, excluding payments due at the beginning of that calendar year, exceeded the total benefits paid from the fund during the calendar year 1945; the payments credited by the director to the account of the petitioner, exclusive of the amount paid by it on March

18, 1946, for all years prior to 1946, exceeded the benefits charged by the director against the account by an amount equal to at least 10 per cent of the average annual payroll of the petitioner; and the fund exceeded the sum of thirty-five million dollars.

The actual calculation of the rates for all employers subject to the Unemployment Compensation Law requires a portion of the time between January 31 and April 30, the date on which the first quarterly payment of contributions for the calendar year must be made; and on March 18, 1946, the director had not completed this calculation or actually fixed these rates for that calendar year. The director refused to fix any rate for petitioner on the basis of its actual experience in the payment of contributions with respect to the benefits charged against its account, because of its failure to file its report and make its payment on or before January 31, 1946. Instead, on April 5, 1946, he notified the petitioner that its rate of contribution for the calendar year 1946 would be the maximum rate permitted by the statute of 2.7 per cent of the wages paid by it. The position of the director is that, as the books of the department are by statute required to be closed on January 31, 1946, for that calendar year, no information received by him after that date can be used in the calculation and the fixing of the contribution rates for an employer for that year. Efforts to adjust their differences as to the rate of contribution to which the petitioner is entitled under the statute in the factual situation outlined above having failed, the petitioner instituted this original proceeding in mandamus in this Court on December 31, 1946.

The petitioner contends that, despite its failure to file the report and to make the payment on or before January 31, 1946, it is entitled under the statute, because the report was filed and the payment made on March 18, 1946, and before the rates had been calculated and fixed by the director for the calendar year, to a rate of contribution based on its actual experience, and that on that basis its rate should be fixed at 0.9 per cent of the wages paid by

it for the calendar year 1946. It asserts that the action of the director in fixing the maximum rate in the situation which arises from the undisputed facts, though taken by the director in good faith, is arbitrary and in reality results in the imposition of a penalty which its admittedly satisfactory record of actual experience does not deserve, and that such action can not be justified by any provision of the statute. It further insists that, under the Unemployment Compensation Law, it has a clear legal right to the rate of contribution which its actual experience establishes.

Though admitting the factual situation heretofore mentioned, the director contends that to enable him to comply with the statute in the performance of his duties to calculate and fix the rates of contributions for all employers, he must close the books of the department on January 31, in each year; that, as a consequence of that requirement of the law, any report filed after that date can not be considered by him in calculating and fixing the rates of contributions for that calendar year, which, under the regulations of the director, promulgated pursuant to the statute, he must do between that date and April 30, when the first payment of the contribution is due from each employer; that if any report received after January 31 is considered for that purpose, all reports so received should be considered, which procedure would enable all employers to delay the filing of reports indefinitely and prevent the calculation and the fixing of any rate for a given calendar year, which must be done as of January 1 in such year; and that as to any employer whose report is not filed by January 31, in any calendar year, since no rate can be calculated or fixed for him, the maximum or basic statutory rate of 2.7 per cent applies. He denies that his action in fixing that rate for the petitioner for the calendar year 1946 is arbitrary; and he insists that he has no discretion or course of action other than to fix the rate under the statute at the maximum figure.

No prior decision of this Court is available as an aid in the solution of these conflicting views. In the accomplish-

ment of that result, several statutory provisions, contained in various acts of the Legislature which together constitute the present Unemployment Compensation Law of this State, must be considered and applied.

Section 5, Article 5, Chapter 97, Acts of the Legislature, Regular Session, 1941, states that on and after January 1, 1941, an employer shall make payments to the unemployment compensation fund equal to 2.7 per cent of wages paid by him with respect to employment during each calendar year, beginning with the calendar year 1941, subject, however, to the provisions of Sections 9 to 13 of that article of the statute. Of the last mentioned sections, 11 and 12 have been repealed. Section 9, Article 5, Chapter 76 of the Acts of the Legislature, Regular Session, 1943, declares that an employer's payment rate shall be reduced only as of January 1 of a calendar year and shall not be reduced below 2.7 per cent prior to January 1, 1941, or thereafter, unless the total assets of the fund, excluding payments payable at the beginning of the year, exceed the total benefits paid from the fund within the last preceding year.

Section 10, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, provides that on and after January 1, 1945, after the requirements of Section 9 have been complied with, an employer's payment shall remain at 2.7 per cent until, as set forth in subsection 1, there have elapsed three consecutive years immediately preceding the computation date throughout which an employer's account was chargeable with benefits, and, as set forth in subsection 7, his payments credited to his account for all past years exceed the benefits charged to his account by an amount equal to at least 10 per cent of his average annual pay roll, in which case his rate shall be 0.9 per cent. Subsections 2, 3, 4, 5, 6, 7, 8 and 9, of Section 10, respectively, specify the percentage rates, varying from 2.4 per cent to 0.5 per cent when the payments credited to the account of the employer exceed the benefits charged to his account by respective amounts equal to stated minimum

percentages of his average annual pay roll which range from 5.5 per cent to 12 per cent.

It is conceded, in the brief filed in behalf of the defendant, that the petitioner has fulfilled the conditions imposed by Section 9 and by subsection 1 of Section 10. It is also admitted in the answer of the defendant that the payments credited by the director to the account of the petitioner, exclusive of the amount paid by it on March 18, 1946, for all years prior to 1946, exceeded the benefits charged by the director to its account by an amount equal to at least 10 per cent of its average annual pay roll. That fact, thus admitted, brings the petitioner within the provisions of subsection 7 of Section 10.

Section 10-a, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, in subsection 1, declares that if at any time or times the unemployment compensation fund, including the trust fund, clearing account, and benefit account, and excluding therefrom the amount required to pay the maximum benefit amount as determined on all claims allowed, shall fall below the sum of thirty-five million dollars, the director shall suspend the decreased rates as provided in that chapter, and all contributions of employers which are due and payable upon the next due date following such suspension shall be paid at the rate of 2.7 per cent.

Subsection 3, Section 7, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, provides that the director shall, for the year 1941, and for each calendar year thereafter, classify employers in accordance with their actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their account, with a view of fixing such contribution rates as will reflect such experience. It also provides that for the purpose of fixing such contribution rates for each calendar year the books of the department shall be closed on January 31 of such year, and that any contributions thereafter paid with respect to wages paid for employment during preceding calendar years, as well

as benefits thereafter paid with respect to compensable weeks ending on or before December 31 of the preceding year, shall not be taken into account until the time for fixing contribution rates for the succeeding calendar year. The subsection also provides that any payment made on or before the termination of an extension of time for such payment, granted by the director, shall be taken into account for the purpose of fixing contribution rates, and that whenever through mistake or inadvertence erroneous credits or charges have been made to or against the reserve account of any employer, the rate shall be adjusted as of January 1 of the calendar year in which such mistake or inadvertence is discovered. Because the payment by the petitioner on March 18, 1946, was made immediately upon the discovery of its oversight, no extension was applied for by the petitioner or granted by the director.

By regulations promulgated by the director pursuant to the statute, beginning January 1, 1942, the contributions required of employers during a calendar year are due and payable quarterly on the last day of the month next following the quarter for which contributions have accrued. Revised Regulations of the Director of Unemployment Compensation 1(c). Under these regulations the last quarterly payment of the contribution by the petitioner, for the calendar year 1945, became due on January 31, 1946, and the first quarterly payment of its contribution, for the calendar year 1946, became due on April 30, 1946.

In applying the foregoing provisions of the statute and of the regulations to the facts consideration and effect must be given to each of such provisions.

It is earnestly insisted by the defendant that, as the statute provides, in subsection 3, Section 7, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, that any contributions paid after January 31 of any calendar year with respect to wages paid for employment during preceding calendar years, as well as benefits thereafter paid with respect to compensable weeks ending on

or before December 31 of the preceding year, shall not be taken into account until the time for fixing contribution rates for the succeeding calendar year, he is not permitted to consider the payment of the contribution of the petitioner, made on March 18, 1946, for the last quarter of 1945, or the information contained in its report filed on that day, in calculating and fixing its rate of contributions for the calendar year 1946. This contention overlooks the admitted fact that, even if the contribution paid by the petitioner for the last quarter of the calendar year 1945, on March 18, 1946, is excluded, as directed by the provision of the statute upon which the defendant relies, the payments credited by the director to the account of the petitioner for all years prior to 1946 exceed the benefits charged by the director to its account by an amount equal to at least 10 per cent of its average annual pay roll. In this situation the above mentioned provision of subsection 3 of Section 7 does not apply. Consequently it does not operate to prevent the director from calculating the rate of contributions of the petitioner for the calendar year 1946 in accordance with its actual experience in the payment of contributions in its own behalf and with respect to benefits charged against its account with a view of fixing such rate of contribution as will reflect its actual experience, or to deprive the petitioner of the advantage accorded to it by subsection 7 of Section 10 of the statute.

It is clear that the information required to be embodied in the report and which is necesary to enable the director to calculate and fix the rate of contributions for the calendar year was due on or before January 31, in that year, and that the petitioner, regardless of the cause, was delinquent in that respect and did not furnish the information until March 18, 1946. The report, nevertheless, was filed during the period January 31, 1946, and April 30, 1946, while the calculation of the rates was in progress and before it was completed and before the rates were actually fixed. It is conceded that the rates could not be, and were not, calculated or fixed, on January 31, or for

a number of days immediately following that date, and that they must be, and they were, calculated and fixed before April 30, when the first contributions, based on the calculated rates, became payable pursuant to the regulations. Under the statute, as here applied, the employer who, for any reason and without an extension of time granted by the director, fails to file his report and pay the contribution due from him by January 31, when the books of the department are closed, does so at the risk of losing the rate to which his actual experience entitles him if the rates have been calculated and fixed before his report is filed and his payment is made, or if he is not entitled, in any particular case, to have the assessment of his contribution, as made by the director, redetermined, after notice, as provided by subsection 1, Section 17-a, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943. If the report, containing the required information, though late, is in fact filed and the information which it contains is thus made available to the director, and the payment of the contribution due is made, as in this case, before the rates are actually calculated and fixed and in sufficient time to enable him to use the report for that purpose, the petitioner, whose delinquency is admittedly due solely to an oversight, should not be held to lose or forfeit the benefit of its experience for the immediately preceding three year period and be required to submit to the maximum or statutory rate. No provision of the statute expressly so declares. No penalty is imposed by any language of the act that can reasonably be interpreted to have that effect. A penalty should not be exacted unless it is provided, or clearly intended to be imposed, by the statute. No express mention of any penalty is made in Article 5 of the statute.

The situation which arose from the failure of the petitioner to file its report discloses that the director was not, for that reason, seriously inconvenienced or deprived of any information needed by him to calculate and fix the rate for the petitioner based on its actual experience for prior years, or the fund subjected to any loss. If, in these

circumstances, the petitioner is denied the rate which its prior actual experience, under the statute, entitles it to enjoy, and if it is required, at an increased annual cost of approximately ten thousand dollars, to submit to the maximum or basic statutory rate of 2.7 per cent, it will suffer a heavy financial loss. That rate is higher than the rate fixed for employers in designated categories, mentioned in several subsections of Section 10 of the statute, whose experience with relation to payments of contributions and benefits charged against their accounts is less favorable than that of the petitioner. To impose the rate of 2.7 per cent upon the petitioner, in the face of the undisputed facts in this case, would be to favor employers with unsatisfactory and costly experience over an employer whose more satisfactory record entitles him to a lower rate. This would happen, not because of the existence of an experience which merits a lower rate, but in spite of it and because of an oversight or inadvertence which, of itself, did not prevent the director from calculating or fixing the rate and which has produced no detriment or loss to the fund or has caused no serious trouble or inconvenience to any division of the department. To sanction such result would defeat an important purpose of the statute, which is to encourage employers to establish, on a comparative basis, favorable actual experiences in the payment of contributions on their own behalf in relation to the benefits charged against their accounts, and to accord to those who establish more favorable actual experiences than others the advantage of a relatively lower rate.

These considerations lead to the conclusion that the unintentional failure, because of an oversight or an inadvertence, by the petitioner to file its report for the final quarter of 1945, and to pay its contribution by January 31, 1946, and until March 18, 1946, at which time the rates for that calendar year had not been completely calculated or actually fixed by the director, did not deprive it of the benefit of its actual experience during prior years in the calculation and the fixing of its rate of contribution for the calendar year 1946.

This conclusion is consonant with another section of the statute, Section 17-a, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, subsection 1 of which reads as follows:

> "If an employer fails to file reports for the purpose of determining the amount of contribution in accordance with the regulations of the director, or files manifestly incorrect or insufficient reports, the director may assess the contribution and any interest due on the basis of the information submitted by the employer or on the basis of an estimate as to the amount due, and shall give written notice of such assessment to such employer: *Provided,* That such assessment shall be subject to redetermination by the director upon the filing by the employer of correct and sufficient reports within thirty days after notice of such assessment shall be given to him."

It is argued, in behalf of the defendant, that the quoted language of the section does not apply to the factual situation which exists in this case, and that the section provides no relief for an employer in default, but instead, establishes only summary methods for proceeding against such employer to compel compliance with the statute and the regulations of the director. That argument is not persuasive. The petitioner did fail, on January 31, 1946, to file its report which was then required for the purpose of determining the amount of its contribution in accordance with the regulations of the director. The action of the director did not result from an incorrect or insufficient report, but from the absence, on January 31, 1946, of any report at all. In that particular the petitioner was in default. The failure to file the report on time is covered by the first clause of the subsection. Other language contained in it refers to the assessment by the director of the contribution on the basis of information submitted by an employer, or on the basis of an estimate as to the amount due, which latter provision apparently applies when no report is filed at any time. The subsection also provides that when the assessment has been made the employer

shall be given written notice of such assessment. The last provision of the subsection makes the assessment subject to redetermination by the director upon the filing by the employer of correct and sufficient reports within thirty days after the notice has been given. Though no notice of the assessment by the director of the maximum rate of 2.7 per cent was given to the petitioner before its report was belatedly filed on March 18, 1946, a notice to that effect was given on April 5, 1946. At that time the report, which is not questioned as incorrect or insufficient, had been filed and the information which it contained was available to the director to enable him to redetermine his prior assessment of the maximum rate. For all practical purposes the petitioner had satisfied the above mentioned provision of subsection 1 of Section 17-a of the act. It had not lost its right to have the former assessment redetermined, and it was the duty of the director to redetermine that assessment.

As stated earlier in this opinion, subsection 3 of Section 7, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, requires the director, for and after the year 1941, to classify employers for each calendar year, in accordance with their actual experience in the payment of contributions on their own behalf and with respect to benefits charged against their account, with the view of fixing such contribution rates as will reflect such experience. By this express mandate of the statute it was the duty of the director to recognize and give effect, in the calculation and the fixing of the rate of contribution for the petitioner for the calendar year 1946, to its actual experience, and the petitioner has the clear legal right to require the performance of that duty by the director. Under the facts in this case, for the reasons stated, this right was not lost or defeated by the failure of the petitioner to file its report and to pay its contribution on or before January 31, 1946.

The writ of mandamus will issue to compel the performance of a duty which devolves by law upon public officers or others against whom the writ may be invoked

when he who seeks the remedy afforded by the writ has a specific legal right for the enjoyment, the protection or the redress of which the discharge of such duty is necessary. 34 Am. Jur., Mandamus, Section 54. Except in special circumstances a prima facie showing of legal right to relief entitles a relator to the writ of mandamus. *State ex rel. Downey* v. *Sims*, 125 W. Va. 627, 630, 26 S. E. 2d 161, 162. No special circumstances here appear which remove this case from the operation of this general rule. The undisputed facts show that there is a clear legal right in the petitioner to the relief which it seeks, that it is entitled to have performance of the act demanded, and that the duty rests on the defendant to perform that act. It is likewise evident that the petitioner has no other adequate remedy by which it can obtain the relief to which it is entitled.

> "Mandamus will issue where the undisputed facts show that petitioner has clear legal right to the performance of the act demanded, and a corresponding duty rests upon respondent to perfrom that duty; and that there is no other adequate remedy open to petitioner." *Board of Education of the District of Fayetteville et al.* v. *Lawson, Auditor,* 113 W. Va. 60, 166 S. E. 696.

The writ of mandamus as prayed for in the petition is awarded.

*Writ awarded.*