STATE *ex rel.* BOONE COUNTY COAL CORPORATION

*v.*

C. S. DAVIS, *Director of Employment Security of the State of West Virginia*

(No. 10223)

Submitted November 15, 1949. Decided December 13, 1949.

LOVINS, JUDGE, not participating.

*Spilman, Thomas & Battle, R. S. Spilman, Jr.,* for petitioner.

*Leo Loeb, Franklin W. Kern,* for defendant.

RILEY, JUDGE:

The State of West Virginia at the relation of Boone County Coal Corporation, a corporation, in this original proceeding in mandamus seeks to command the defendant, C. S. Davis, Director of Employment Security, to fix relator's rate of contribution to the unemployment compensation fund for the calendar year 1949 at 0.7 per cent of its payroll, and to accept settlement for the year 1949 on such basis.

This case, having been submitted to the Court on relator's petition, respondent's answer, and relator's demurrer to the answer, involves no disputed question of fact.

The relator, Boone County Coal Corporation, an employer within the meaning of the unemployment act, Chapter 1, Acts of the Legislature, 1936, Second Extraordinary Session, as amended, now is and has for many years been engaged in the production of coal, oil, gas and other natural resources in Boone and Logan Counties.

The relator's payroll, as alleged in the petition, for several years past has amounted to more than one million dollars annually, and its payroll for the year 1949 will probably amount to more than one million, five hundred thousand dollars.

On July 31, 1948, relator, through inadvertence, failed to file with the director its report of the amount of wages paid by it for the preceding quarter of 1948, ending June

30, 1948, and to make payment of its contribution to the fund for that period, which report and payment were under the regulations promulgated by the director required to be filed and paid on or before that date. The vacations of relator's auditor and cashier overlapped at the end of July, 1948. The necessary wage information and check in payment for the second quarter of 1948 were prepared prior to July 31, 1948. The oversight occurred by reason of the absence of both the auditor and cashier from relator's office during the last week in July, 1948, and neither the wage information nor the check was mailed on or before July 31, 1948. When the auditor returned about August 7, 1948, his attention was called to the papers, whereupon the report and check were promptly mailed to the director's office. At that time the director was in possession of all data necessary to enable him to calculate and fix relator's rate of contribution to the fund for the year 1949. On the day the director received the report and check, he had hardly begun, and certainly he had not completed, the calculation of rates for all employers subject to the unemployment compensation act for the ensuing year.

The director regularly filed relator's report on the day it was received, and accepted the tendered payment, with interest at the rate of one per cent a month from July 31, 1948, to August 7, 1948; but because of relator's delinquency in filing the report and making payment in accordance therewith, the director refused to accept the payment in final settlement of relator's liability. Evidently invoking the provisions of Subsection (3), Section 7, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947, the director ignored relator's actual experience, and billed relator with the difference between the amount of contribution on the basis of 2.7 per cent and 0.7 per cent. The pertinent provisions of said subsection (3) read:

"The director shall, for the year one thousand nine hundred forty-eight and for each calendar year thereafter, classify employers in accordance with their actual experience in the payment of

contributions on their own behalf and with respect to benefits charged against their accounts, with a view of fixing such contribution rates as will reflect such experience. For the purpose of fixing such contribution rates for each calendar year, the books of the department shall be closed on July thirty-one of the preceding calendar year, and any contributions thereafter paid, as well as benefits thereafter paid with respect to compensable weeks ending on or before June thirty of the preceding calendar year, shall not be taken into account until the next annual date for fixing contribution rates: *Provided, however,* That if an employer has failed to furnish to the director on or before July thirty-one of such preceding calendar year the wage information for all past periods necessary for the computation of the contribution rate such employer's rate shall be two and seven-tenths per cent: * * *."

On December 23, 1948, the director by letter formally notified relator that its rate for the calendar year 1949 was fixed at 2.7 per cent, and relator within thirty days filed a correct and sufficient report, and requested that its rate be redetermined under the provisions of Subsection 1, Section 17-a, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, which provides:

"If an employer fails to file reports for the purpose of determining the amount of contribution in accordance with the regulations of the director, or files manifestly incorrect or insufficient reports, the director may assess the contribution and any interest due on the basis of the information submitted by the employer or on the basis of an estimate as to the amount due, and shall give written notice of such assessment to such employer: *Provided,* That such assessment shall be subject to redetermination by the director upon the filing by the employer of correct and sufficient reports within thirty days after notice of such assessment shall be given to him."

The director refused this request for a redetermination of relator's rate, but, at relator's request submitted the question of relator's right to a reduced rate to the Attorney General of West Virginia, who rendered a written

opinion, dated June 22, 1949, to the effect that relator was entitled to the lower rate reflected by its employment experience.

At this point it seems pertinent to state that as of July 31, 1948, the date relator's report and payment should have been filed and made, the payments credited to relator's account for all past years having exceeded the benefits charged to said account by an amount at least of 11 per cent of relator's average annual payroll, relator's rate for the year 1949, based on such experience alone, should have been 0.7 per cent, under the provisions of Subsection (8), Section 10, Article 5, Chapter 162, Acts of the Legislature, 1947. But the director, not deeming it advisable in this instance to follow the attorney general's opinion, continued to assert, and still asserts, that relator is liable to the fund in an amount equal to 2.7 per cent of its payroll for the year 1949, and refused, and still refuses, to accept payments on the basis of 0.7 per cent of relator's payroll in full settlement of the latter's liability to the fund. Relator's petition alleges that on the basis of the director's ruling, the relator will pay for the year 1949 the sum of $43,818.13, instead of $11,360.33, if the rate of 0.7 per cent is used, a difference of $32,457.80. It is on the basis of the director's refusal that this Court issued a rule, requiring the respondent to show cause, as prayed for in relator's petition.

Various provisions of the Acts of the Legislature, which constitute the unemployment compensation law, Chapter 1, Second Extraordinary Session, Acts of the Legislature, 1936, as amended, and certain provisions of the regulations of the director of the West Virginia department of unemployment compensation are pertinent to a decision of this case.

Section 5, Article 5, Chapter 97, Acts of the Legislature, Regular Session, 1941, provides that, subject to the provisions of Sections 9 to 13, inclusive, of Article 5 (Sections 11 and 12 having been repealed in 1941 and 1943, respectively), an employer shall on or before January 1, 1941, make payments to the unemployment compensation fund

equal to 2.7 per cent of wages paid by him with respect to employment during each calendar year, beginning with the calendar year 1941.

Section 9, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, provides that an employer's payment rate shall be reduced only as of January first of a calendar year, and shall not be reduced below 2.7 per cent prior to January 1, 1941, or thereafter, unless the total assets of the fund, excluding payments payable at the beginning of the year, exceed the total benefits paid from the fund within the last preceding year.

Section 13, Article 5, Chapter 1, Acts of the Legislature, Second Extraordinary Session, 1936, provides that "All payments shall be made in accordance with rules and regulations of the director."

By regulations issued by the director pursuant to the unemployment compensation statute, beginning January 1, 1942, the contributions required of employers during the calendar year became due and payable quarterly on the last day of the month next following the quarter for which contributions have accrued. See Regulations, Revised April 1, 1945, of the West Virginia Department of Unemployment Compensation, I(c). Under these regulations and Subsection (3), Section 7, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947, payment of contribution by the relator for the second quarter of 1948, ending on June 30, 1948, became due on July 31, 1948, and the first quarterly payments of its contribution for the calendar year 1949, became due on March 31, 1949.

Subsection (d) of Section I of the foregoing Regulations provides that the director upon written request of employer filed "on or before the due date of any contribution payment may, for good cause shown, grant, in writing, an extension of time for making such payments, but: (1) No extension shall exceed thirty days; and (2) no extension shall postpone payment beyond the fifteenth day preceding the last date for filing tax returns under Subchapter A of Chapter C of the Internal Revenue Code."

Section 10, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947, provides that on and after January 1, 1948, after the requirements of Section 9, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, of that article have been complied with, an employer's payment shall remain 2.7 per cent until, as set forth under Subsection (1), there having elapsed thirty-six consecutive months immediately preceding the computation date, throughout which an employer's account was chargeable with benefits; and Subsections 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, respectively, specify percentage rates varying from 2.4 per cent to zero when the payments credited to the account of an employer exceed the benefits charged to his account by the respective amounts equal to stated minimum percentages of his average annual payroll ranging from 5.5 per cent to 14 per cent.

Subsection 1, Section 10-a, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, provides that "If at any time or times the unemployment compensation fund, including the trust fund, clearing account, and benefit account, and excluding therefrom the amount required to pay the maximum benefit amount as determined on all claims allowed, shall fall below the sum of thirty-five million dollars, the director shall [effective at the commencement of the next calendar quarter] suspend the decreased rates as provided in this chapter, and all contributions of employers which are due and payable upon the next due date following such suspension shall be paid at the rate of two and seven-tenths per cent."

It is contended by defendant that the first proviso in Subsection (3), Section 7, Article 5, aforesaid: "That if an employer has failed to furnish to the director on or before July thirty-one of such preceding calendar year the wage information for all past periods necessary for the computation of the contribution rate such employer's rate shall be two and seven-tenths per cent," is mandatory, and further that said proviso is to be administered as an integral part of the unemployment compensation law, unrelated to any of its other provisions, particularly

Subsection (1), Section 17-a. In this regard it is the position of the director that rate-making is controlled entirely and exclusively by the provisions of Section 5, Article 5, Chapter 97, Acts of the Legislature, 1941, Sections 7 and 10, Article 5, Chapter 162, Acts of the Legislature, 1947, and Section 9, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, subject only to the provisions of Section 10-a, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, relating to suspension of decreased rates, if the fund should fall below the minimum amount as therein provided, which enumerated sections, the director asserts, preclude "any employer from becoming entitled to a decreased rate unless he has met all the requirements of Sections 9 and 10; and that Section 17-a is no part or portion, either by express legislation or interpretation, of the indicated rate fixing provisions." It is asserted that Section 17-a affords the director a remedy for estimating wage information which a defaulting employer has failed to furnish, as required by other provisions of the statute, and that it confers "neither expressly nor by implication any authority or discretion to redetermine rates." Evidently, the director argues that Section 17-a was designed as a collection measure, or a means of estimating wages that an employer has failed to report, refuses to report, or incorrectly reports, and is not in any sense a measure for redetermining rates.

Relator, on the other hand, asserts that this case is fully controlled by the recent case of *Puritan Coal Corporation* v. *Davis,* 130 W. Va. 20, 42 S. E. 2d 807, in which the employer's inadvertence in the filing of the required wage information report within the time prescribed by statute and its promptness in submitting the same upon discovery of the oversight, are indistinguishable from the facts presented by this record. In the *Puritan* case, however, the delay was much longer than the delay in the instant case, and Subsection (3), Section 7, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, under consideration in the *Puritan* case, provided that for the purpose of fixing the contribution rates for each calendar year, the books should be closed on January 31 of such year,

and not July 31, as provided in Subsection (3), Section 7, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947, the statute under consideration; and the proviso in said Subsection (3) of the 1947 statute, relied upon by the director, was not contained in the Act of 1945, and was not considered by this Court in the *Puritan* case.

But relator contends further that even if the proviso is mandatory, it was the duty of the director upon the employer's delay in filing the required report to fix the employer's rate at 2.7 per cent, make an assessment on the basis of that rate, and give notice of such assessment to the employer, who, within thirty days thereafter, under Section 17-a, has the right to have the basic rate of 2.7 per cent redetermined, and the rate fixed on the basis of the employer's actual experience.

The act containing the proviso here involved, Chapter 162, Acts of the Legislature, Regular Session, 1947, was passed March 8, 1947, and became effective April 1, 1947, and was not involved in the *Puritan Coal Corporation* case, which was decided March 18, 1947. However, from the opinion it appears that in the absence of such a proviso the director was wont to fix the delinquent employer's rate at the basic rate of 2.7 per cent.

In determining whether the proviso is directory or mandatory, it is important to note that the Legislature did not employ language to the effect that "the director shall fix the employer's rate at 2.7 per cent." On the contrary, the proviso states that a delinquent "employer's rate shall be two and seven-tenths per cent." The exact language of the proviso fixes the employer's rate upon delinquency at the basic rate, that is, it purports to prescribe a status as to the employer's rate of contribution in event of delinquency. In *Baer* v. *Gore,* 79 W. Va. 50, 52, 90 S. E. 530, this Court said: "Generally 'shall', when used in constitutions and statutes, leaves no way open for the substitution of discretion." The rule that the word "shall" should be construed as mandatory has appropriate application when the provision of the statute relates to the essence of the

thing to be done, or to matters of substance. *Alabama Pine Co.* v. *Merchants and Farmers Bank,* 215 Ala. 66, 109 So. 358, and *Warrington et al* v. *Bobb, et al,* (Mo. App.), 56 S. W. 2d 835. In *Morris* v. *Board of Canvassers of City of Charleston,* 49 W. Va. 251, 256, 38 S. E. 500, this Court adopted the test prescribed by Lord Mansfield in *Rex* v. *Loxdole,* Burrows 44: "Whether a statute is mandatory or not depends upon whether the thing directed to be done was of the essence of that required," and quoted " 'And where a statute limits a thing to be done in a particular form, it includes in itself a negative, viz: that it shall not be done otherwise.' 1 Kent. Comm. (5 Ed.) 467, note." "So that," said the Supreme Court of the United States in *United States* v. *1 Case Hairpencil's,* 1 Payne, 406, "a law directing a thing to be done in a certain manner implies that it shall not be done in any other manner." The instant proviso speaks in commanding legislative language, when it provides that a delinquent "employer's rate shall be two and seven-tenths per cent"; it deals with the very essence and substance of that which the legislation concerns; and the language impliedly includes the negative that the rate upon delinquency shall not be other than 2.7 per cent. In our opinion, it leaves no room for discretion on the part of the director in the matter of fixing a delinquent employer's rate in the first instance upon the delinquency at the basic rate.

It follows that *eo instante* upon plaintiff employer's failure to file the requisite wage information on July 31, 1948, it was the director's duty, under the mandatory language of the proviso, to assess the employer on the basis of the 2.7 per cent rate.

What then is the effect of Subsection (1), Section 17-a, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, which the Legislature of 1947 did not deign to repeal when it enacted into law the proviso heretofore discussed, that in case of delinquency in submitting reports, the employer's rate shall be 2.7 per cent? Section 17-a provides that if an employer fails to file a report, or files an incorrect report of wage information, the director

"may" assess the contribution and interest due on the basis of information submitted by the employer, or on the basis of an estimate by the director as to the amount due, and shall give written notice of such assessment to the employer. Then the subsection provides as heretofore indicated, "That such assessment shall be subject to redetermination by the director upon the filing by the employer of correct and sufficient reports within thirty days after notice of such assessment shall be given" to the employer. This subsection, according to the director, is inconsistent with the proviso in that under the latter a delinquent employer's rate in the first instance "shall be two and seven-tenths per cent," whereas Subsection (1) of said Section 17-a provides that the director may assess a delinquent employer's contribution and interest, either on the basis of information submitted by the employer, or on the basis of an estimate to be made by the director as to the amount due.

The provisions of the two statutes, in our opinion, are not inconsistent, but dovetail with each other, in that they both deal with an employer who has failed to furnish, in the case of the proviso, "on or before July thirty-one of the preceding calendar year," the requisite wage information; whereas Subsection (1) of said Section 17-a deals with an employer who fails to file wage information reports in accordance with the regulations of the director, or files manifestly incorrect or insufficent reports. Under either statute, the director must make an assessment; in the case of the proviso, at 2.7 per cent; and under said Section 17-a on the basis of information submitted by the employer, or of an estimate by the director. But said Section 17-a, as heretofore indicated, provides that, within thirty days after notice of the assessment to a delinquent employer, such employer may apply for and obtain a redetermination of the assessment. This latter provision of said Section 17-a is, in our opinion, not inconsistent with the proviso under consideration. It provides the *modus operandi* after an allegedly erroneous assessment has been made and notice thereof given to the employer.

So we do not agree with the director's assertion that the proviso is an integral part of the statute, separate from the other provisions thereof. The instant employer has complied fully with all the requirements of Section 9, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, as well as Subsection (1), Section 10, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947; and, therefore, were it not for the alleged delinquency, the employer would have been entitled to such lower rate as the amounts credited to its account for past years exceed the benefits charged to its account by such amount equal to a prescribed minimum percentage of its average annual payroll, which in the instant case is 11 per cent. Thus, an employer qualifying under Section 10, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947, depending upon its experience may be entitled to a rate below the basic rate of 2.7 per cent ranging from 2.4 per cent to zero. In the instant case, as heretofore stated, the employer, under Subsection (8) of said Section 10, Article 5, because the payments credited to its account for all past years exceed the benefits charged to its account by an amount equal to at least 11 per cent of the employer's average annual payroll, is entitled to a rate, in the absence of delinquency, of 0.7 per cent. We think that the proviso to Subsection (3), Section 7, Article 5, Chapter 162, Acts of the Legislature, Regular Session, 1947, should be read in connection with the other provisions of the statute, including the rate provisions of said Section 10 of the 1947 Act, and the redetermination provision contained in said Section 17-a of the 1943 Act.

We reach the foregoing conclusion, because we think this case, in essential details, is fully controlled by the *Puritan Coal Corporation* case. In that case, through inadvertence, as in the instant case, the employer failed to file in the director's office the prescribed wage information report on time. In that case, as was his custom, the director, in the absence of the proviso contained in the 1947 statute, assessed the employer on the basis of 2.7 per cent; and in the instant case the director, under the

legislative fiat contained in the proviso of the 1947 statute, likewise assessed the instant employer on the basis of 2.7 per cent. In the *Puritan Coal Corporation* case, within due time, after notice, the employer asked for a redetermination under said Section 17-a of the 1943 statute; and in this case the delinquent employer in due time asked for a redetermination and tendered for filing a correct report showing that, based upon its experience alone, it was entitled to a rating of 0.7 per cent. In the *Puritan Coal Corporation* case, the employer, if there had been no delinquency, would have been entitled to a rate of contribution of 0.9 per cent. In the instant case, were it not for the employer's delinquency, it would, in the first instance, be entitled to a rate of contribution of 0.7 per cent. In point 3 of the syllabus of the *Puritan Coal Corporation* case, this Court held: "When an employer, subject to the Unemployment Compensation Law of this State, who, though having inadvertently made default in filing a report and in making a payment required of him on a specified date, has not lost the legal right secured to him by subsection 3, Section 7, Article 5, Chapter 130, Acts of the Legislature, Regular Session, 1945, to have the rate of annual contributions required of him determined by the director upon the basis of the actual experience of such employer, or the legal right secured to him to have an assessment made by the director redetermined, as provided in Subsection (1), Section 17-a, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, and it clearly appears that such rights are possessed by such employer, and that there is no other adequate remedy available to him, the writ of mandamus will issue at his instance to require the director to recognize such rights and to perform the duties imposed upon the director by those sections of the Unemployment Compensation Law."

We think that the *Puritan Coal Corporation* case has fully settled the questions raised by the director in the brief filed on his behalf. The holding of this Court in that case answers the director's contention that said Section 17-a, "relates to redetermination of contribution lia-

bility and not to fixing of rates." The provisions of said Section 17-a permitting redetermination of an alleged erroneous assessment within thirty days after notice to the employer of such assessment, is not limited in any way, but redetermination may be had where, after delinquency, an erroneous assessment is made no matter upon what ground the assessment is erroneous. Contribution liability, we think is determined by both the rate of assessment and the payroll base upon which the assessment is levied. That being so, upon redetermination properly had, the director in appraising the allegedly erroneous assessment, should ascertain the employer's payroll base, as well as the employer's experience; and so it is the duty of the director in the instant case to redetermine the instant employer's contribution liability, make assessment on the basis of the employer's actual experience under the provisions of Section 10, Article 5, of the 1947 statute, and on that basis accept the payment made by employer on August 7, 1948, as full settlement of relator's contribution liability.

The record discloses that at the time the report was actually filed, the director was not, by reason of the delay in filing, inconvenienced, or deprived of any information necessary to calculate and fix the rate based on relator's experience for the prior years; nor did the delay in filing the report subject the fund to any loss. As this record discloses, the employer was entitled to an extremely low rate of 0.7 per cent based upon a favorable experience extending over many years.

The director suggests in his brief that there are more than three hundred other employers delinquent. Perhaps some of these, if not many, have not had the favorable experience that the instant employer has enjoyed: perhaps some by reason of their adverse experience may be entitled to no rate lower than the basic rate. As suggested in the *Puritan Coal Corporation* case at page 30 of the opinion: "To impose the rate of 2.7 per cent upon the petitioner, in the face of the undisputed facts in this case,

would be to favor employers with unsatisfactory and costly experience over an employer whose more satisfactory record entitles him to a lower rate. This would happen, not because of the existence of an experience which merits a lower rate, but in spite of it and because of an oversight or inadvertence which, of itself, did not prevent the director from calculating or fixing the rate and which has produced no detriment or loss to the fund or has caused no serious trouble or inconvenience to any division of the department. To sanction such result would defeat an important purpose of the statute, which is to encourage employers to establish, on a comparative basis, favorable actual experiences in the payment of contributions on their own behalf in relation to the benefits charged against their accounts, and to accord to those who establish more favorable actual experiences than others the advantage of a relatively lower rate."

In the case of employers having an unfavorable experience meriting the basic rate only, the proviso, if construed as the director contends it should be, would not prompt them to file wage information reports promptly, and certainly the proviso would not prompt such delinquent employers, having the basic rate to better their experience in the future. In this case, if the director's contention is allowed to prevail, relator, who has had up until the time of the delinquency a favorable employment experience, as heretofore indicated, will be mulct of an additional $32,457.80 for the calendar year 1949, by reason of its inadvertent failure to file in time the required wage information report and make payment, which delinquency extended only from July 31 to August 7, 1948, whereas an employer whose employment experience through past years has been such as to merit the basic rate of 2.7 per cent, and whose delinquency extends over a much greater period of time than found in the instant record, will not by reason of such delinquency be required to pay any assessment in addition to that which he would be required to pay had there been no delinquency.

We believe that said Section 17-a of the 1943 statute,

under our present construction, will expedite rather than deter the prompt filing of wage information reports, and will relieve the director of considerable work in the event of delinquencies, where no application for a redetermination has been made. Construing, as we do, the proviso of said Section 17-a, the director is not required to investigate and estimate the contribution liability, but he can and should forthwith impose the basic rate of 2.7 per cent, notwithstanding the employer's experience. If the employer does not seek a redetermination under Section 17-a, he will be charged with the basic rate for the following year, and thus, as suggested by the relator in its reply brief, the director, by assessing on the delinquent employer the 2.7 per cent rate, is in a position to force any delinquent employer who is entitled by his experience to a better rate, to establish the employer's true rate, by filing a correct wage information report within thirty days after notice of the assessment or abandon such right forever.

For the foregoing reasons we think that the director, having assessed the relator on the basis of 2.7 per cent, and having given notice thereof to relator, as he was required to do, and relator having thereafter filed a correct wage information report, and having asked for a redetermination under Subsection (1), Section 17-a, Article 5, Chapter 76, Acts of the Legislature, Regular Session, 1943, was under the duty to redetermine relator's rate on the basis of relator's actual employment experience, and on that basis, as disclosed by this record, to fix relator's rate at 0.7 per cent. In this regard the writ of mandamus will lie to enforce relator's right in the premises. *Board of Education of Fayetteville District* v. *Lawson, Auditor,* 113 W. Va. 60, 166 S. E. 696; *Puritan Coal Corporation* v. *Davis, Director of Unemployment Compensation, supra.* 33.

We therefore award the writ of mandamus as prayed for in the petition.

*Writ awarded.*